WM. H. HUGHBANKS v. THE BOSTON INVESTMENT
    COMPANY, Appellant; MICHAEL FAY v. THE BOSTON
    INVESTMENT COMPANY, Appellant.

| 92 | 267 |
| 97 | 515 |
| 92 | 267 |
| 122 | 638 |
| 122 | 639 |
| 92 | 267 |
| 127 | 393 |
| 92 | 267 |
| d135 | 425 |

**Principal and Agent:** INDEPENDENT CONTRACTOR. One who acts under a contract with a corporation which authorized him to contract for material and labor in his own name, subject to approval, who is employed "in the construction" of a building, is to give his whole time to its supervision, to report the cost, and who is to be paid a certain sum "in full for his services in looking after the execution of said contract and superintending construction of the building" is a servant of the company and not an independent contractor.

*Same.* Where one is to furnish labor and material at prices to be fixed by him and has full control as to using machinery, no control being reserved to the owner, and the contract makes him alone responsible for injury to laborers, he is not an agent of the owner, and he alone is liable for such injury. *Blink v. Hubinger*, 90 Iowa, 642, distinguished.

SAME: JURY QUESTION. Where one is actively engaged in superintending the carpenter work on a building, employs men and has general charge of all work in the absence of the superintendent, his authority to act for the superintendent is for the jury.

**Master and Servant.** The fact that a servant uses the machinery of another does not make the master liable if that other do injury in using such machinery.

**Court and Jury.** The construction of a written agreement should not be sent to the jury.

*Appeal from  Woodbury  District  Court.*—HON. A.
                VANWAGENEN, Judge.

SATURDAY, OCTOBER 20, 1894.

ACTIONS at law to recover damages for personal injuries alleged to have resulted from negligence on the part of the defendants. In each case there was a trial by jury, and a verdict and judgment for the plaintiff. Defendant, the Boston Investment Company, appeals.—*Reversed.*

*Wright, Hubbard & Bevington* for appellant.

*R. H. Brown* and *W. H. Farnsworth* for appellees.

ROBINSON, J.—In the year 1890 the Boston Investment Company, a corporation of the state of Maine, was having constructed in the city of Sioux City five buildings which were designed for business purposes, one of which was known as the "Bay State Block." Contracts for material and labor required for the buildings were made by John G. Mainland in his own name, and he superintended the erection of the buildings. His authority was derived from a written agreement entered into with the company. In May, 1890, he entered into a contract with E. C. Wakefield, by which the latter agreed to furnish all material and labor and to do all masonwork required in the erection of the Bay State block. He commenced work under his agreement, and to aid in performing it, he purchased and set up on the unfinished building a derrick to be used in raising stone and other material required for use. The morning after it was set up, it was used to unload stone from a wagon in the street. While it was being so used, it broke, and a portion of it fell upon or was thrown against the plaintiffs who were working on the building, causing the injuries for which they seek to recover. These actions were brought against both the company and Wakefield, but the jury in each case returned a verdict in favor of Wakefield. In Hughbanks' case, a verdict was returned in his favor for one thousand and eight hundred dollars, and in the other case a verdict was returned for Fay in the sum of seven thousand dollars. Judgment was rendered in each case in favor of the plaintiff and against the company for the amount of the verdict and costs, and in favor of Wakefield as against the plaintiff. The company alone appeals. The controlling questions are the

same in the two cases, and they are submitted together for our determination.

I.   The plaintiffs began work on the Bay State block on the eighteenth day of August, 1890, and received the injuries of which they complain four days later.   They were not employed by Wakefield, nor were they under his control, but worked as carpenters under an engagement they made with C. L. Wood. His authority is not shown by any written instrument, but he appears to have been superintendent or foreman of the carpenters' department.   The plaintiffs allege that the company was negligent in employing and retaining in its service incompetent and negligent agents and servants, and in permitting the use of defective and unsafe machinery and appliances, and especially in permitting the use of the derrick without having it properly fastened and guarded.   The company alleges that it was engaged in the erection of the Bay State block by and through independent contractors, who controlled the erection of the building, and furnished all material, labor, and appliances required for that purpose, including the derrick in question, and that the company had nothing whatever to do with procuring the derrick, nor with operating it, and is not responsible for the injuries which were caused by it.   The evidence tends to show that the accident was caused by the breaking of a timber of the derrick known as a "deadman," and that the timber broke because it was defective and insufficient for the purposes for which it was used.   At the time of the accident the third floor of the building did not extend to the front end, but only reached to within about twenty feet of it.   The derrick was placed near the front edge of that floor in such a manner that the end of the boom projected over the sidewalk.   The plaintiffs were employed on the second floor, which had been extended to the front end of the building, and

were below the boom.   The derrick had been placed in position to set stone in the front wall, but that was not ready to receive stone, and Wakefield testifies that he was not at the building at the time of the accident; that he did not know that the derrick was to be used that morning; that the teamster who used it was paid a fixed price for delivering each car load of stone at the building, and furnished the team and labor required for that purpose, and that he had no right whatever to use the derrick that day.   It appears that it was operated by an engine, which was run by Wakefield's engineer.   The engine was also used for other purposes. The derrick was new and painted.   Whether the defects in the deadman could have been discovered before it was used, had reasonable care been exercised, was a matter of dispute in the district court.   Some of the evidence tended to show that the derrick was not properly fastened to the building, and that Wood gave some directions in regard to fastening it, and that he was present at the time of the accident, and knew that the derrick was being used.

The contract between the Boston Investment Company, of the first part, and Mainland, of the second part, was as follows:   "That said first party is about to construct five business blocks in Sioux City, plans of which are prepared, which business blocks are known to the parties hereto [one of which is the Bay State block in question in this suit]. That said first party desires to employ the second party in the construction of said buildings as herein stated. It is agreed that the second party shall proceed in his name to let contracts for all the work and material for said buildings, except the carpenter work and material, to the lowest bidder, subject to the approval of the first party; and said second party shall also purchase the material for the woodwork for said buildings, and perform, or cause to be performed, the carpenter work on

the same, and all the material for the woodwork and labor on the woodwork shall be subject to the approval of said first party. The said second party shall superintend and supervise the entire construction of all of said buildings and all the materials and supplies furnished for the same, including foundations, brickwork, stonework, woodwork, painting, and each and everything necessary to complete said buildings, in accordance with plans and specifications, or as said first party may direct. Said second party shall give his exclusive attention to the construction of said buildings and the examination of and supervision of material and work thereon, and shall make all contracts for material and labor on said buildings, of all kinds or character, in his own name, subject, however, to the approval of said first party; it being the intention hereof that the party of the first part shall have the right to determine the prices to be paid for all material and labor for said buildings. The second party shall furnish, on request, to first party, a statement of the actual cost of all work and material furnished or performed for said buildings under the contract, and said first party shall have the right to make any changes, alterations, or additions to any of said buildings, and any changes so made said second party shall supervise and superintend the same in same manner as in the construction of the buildings under the original plans; and said second party shall be responsible, in the first instance, under the contracts he makes therefor, to the person or persons with whom he contracts for labor or material for each and all of said buildings, and shall individually make his contracts for the same; and said first party agrees that, as statements are furnished to them of actual cost of said materials and labor under said contracts, they will pay to second party, for the use and benefit of the persons furnishing said labor and material, the actual cost of said labor and material, subject, however, to

the right of said first party to reserve from said payments such proportionate amounts of the said several sums as will aggregate to the sum of forty thousand dollars, which said sum of forty thousand dollars said second party agrees to receive in payment for labor and material on said buildings in the stock of said first party at the selling value at the time of the completion of said buildings, the intention hereof being that of said total sum of the cost of the material and labor on said buildings said second party is to accept and receive forty thousand dollars of stock of said first party at the selling prices aforesaid at the time said buildings are completed and accepted by said first party; and said first party shall reserve from time to time, from payments due said second party for labor and materials furnished and performed, a sufficient amount so as to leave in their hands at time of the completion of said buildings forty thousand dollars to be then paid for by first party in its stock, which, at its selling value, amounts to forty thousand dollars. Said first party agrees, in consideration of the performance of the agreements and covenants of the party of the second part, that they will pay to said second party, for his services in the construction of said building, a sum which shall be equal to ten per cent of the actual cost of all lumber, glass, and paint furnished for, and all labor of the carpenters, and painters, and glaziers, and carpenter work on said buildings, and said second party agrees to receive said ten per cent on said cost of said materials and labor in full for all his services in looking after the execution of said contracts for material and labor and superintending and supervising the entire construction of said buildings, and hereby agrees to give the construction of said buildings his faithful and entire attention.''

It is said this agreement made Mainland an independent contractor. It contains some provisions which

are not common in contracts of agency. It required him to make all contracts for material and labor in his own name, and made him responsible under such contracts, in the first instance, to the persons with whom he should contract. It also authorized the company to retain from sums which should become due for labor and material, forty thousand dollars, for which Mainland was to accept capital stock of the company, and to that extent he may have been required to advance his own money for the payment of labor and material. But the agreement recites that the company is about to construct business blocks in Sioux City, and desires to employ Mainland in their construction as therein stated. It provides for the letting of contracts for all work and material required, excepting the carpenter work and material, to the lowest bidder, subject to the approval of the company, and requires Mainland to furnish the material and labor necessary for the woodwork. He was required to superintend the entire construction of the buildings, and to examine and supervise the material furnished, and labor performed, and to give his exclusive attention to those objects. He was to furnish to the company a statement of the actual cost of all work and material, and the company reserved the right to approve all contracts he should enter into, and to make changes in the building. In consideration of the performance of the agreement on his part Mainland was to receive ten per cent of the cost of certain labor and material "in full for all his services in looking after the execution of said contracts for material and labor and superintending and supervising the entire construction of said buildings." An examination of the entire agreement leads us to the conclusion that, for the purposes of this case, Mainland must be regarded as an agent of the company. It may be claimed that as to the carpenter work he was an original contractor,

VOL. 92 Ia—18

but the contract, considered as an entirety, shows that his work, in addition to letting contracts and providing materials, was of a supervisory character. He was not required to work as a carpenter, but was obliged to furnish material and labor for the woodwork. He was not allowed a separate sum for that labor and material, but the actual cost of it was to be paid by the company, which reserved "the right to determine the prices to be paid for all material and labor for said buildings." The contract gave to the company not only the right to fix prices, but also the right to approve the labor done and material furnished, and Mainland was subject to its direction and control in all things. It is not shown by whom Wood was employed, nor to what extent he was empowered to act. But it is shown that he was actively engaged in superintending the carpenters' department of the Bay State block; that he employed men; and that, in the absence of Mainland, he had charge of the work, at least within his own department. We are of the opinion that the evidence was sufficient to authorize the court to submit to the jury, as it did, the question whether Wood was authorized to act for, and in the place of, Mainland, and that the jury were authorized to find that Wood was authorized to so act.

II. What Wakefield did was by virtue of an agreement in writing, in which Mainland was designated as party of the first part, and Wakefield as party of the second part, which contained the following provisions: "Said second party agrees with the first party, for the consideration hereinafter mentioned, to well and truly execute and perform, in a true, perfect, and workmanlike manner, all work required in the erection and completion of * * * the Bay State block, * * * and will furnish and provide, at his own expense, all materials and labor necessary to fully complete and perform said work * * * under the

superintendency of said Mainland (or his deputy), and subject to the approval of the Boston Investment Company's superintendent, for the sum of twenty-five thousand, six hundred and eighty-one dollars.  *   *   *   It is further agreed that said second party shall be responsible for every violation of the town or city ordinances, and all laws of Iowa, caused by obstructing streets, alleys, and sidewalks.

It is further agreed and understood that the said first party shall not in any way or manner be answerable or accountable for any loss or damage that may or shall happen said building (so far as the work to be performed under the contract is concerned), or any part or parts thereof, respectively, or for any of the materials or other things used and employed in finishing and completing said work mentioned and contemplated in and by this contract, or for any injury to any person or persons, either workmen or the public, or for any damage to adjoining property, either by said second party or his workmen, or anyone employed by him, against all which injuries and damages to person and property said second party must and shall properly guard against, and must make good all the damage from whatever cause, being strictly liable and responsible for the same.   And all work and material delivered on the premises to form a part of the work are to be considered the property of the party of the first part, and are not to be removed without his consent; but said second party shall have the right to remove all surplus materials therefrom, after completing the work as in the contract specified and set forth, provided the final certificate of the superintendent shall have been duly executed and delivered, as hereafter specified.   Said first party hereby agrees, in consideration of the above covenants and agreements being strictly executed and performed by said second party, as herein specified, to pay to said second party twenty-

five thousand, six hundred and eighty-one dollars, payments to be made as the work progresses to the amount of eighty per cent of the work completed, and the balance when the work is fully completed, and after the expiration of thirty days, and that in each case a certificate shall be obtained from the superintendent of the Boston Investment Company that the work is completed according to the true meaning and intent of the contract, such certificate, however, in no way lessening the total and final responsibility of said second party. That in each case a certificate shall be obtained at expense of the second party from the clerk of the district court of Woodbury county, Iowa, that he has examined the records and finds no liens or claims recorded against said building or the land on which the same is situated (on account of the failure of said second party to pay the same). Neither shall there be any legal or lawful claim against said party of the first part in any manner, from any source whatever, for work or material furnished in the performance of the contract." Portions of the agreement omitted refer in detail to the plans and specifications prepared for the building, and to work to be done and kinds of material to be used in performing the contract.

It is claimed by the appellees that Wakefield was not an independent contractor, but that in performing his contract he was under the control of the company, and acted as its servant. We do not think this claim is well founded. The company reserved no right to control Wakefield in performing his contract. He could procure labor and material in his own way, at such prices as he should elect to pay, and had the right to use such machinery and appliances as he deemed proper, provided that it did not unnecessarily injure the building nor interfere with work being done by others. The superintendent of the company could only require that the material and

labor furnished be what the contract demanded. He could not control Wakefield in the selection of machinery which should be used by him, nor direct the method of its use. It is said that Wood gave some directions in regard to fastening the derrick when it was set up; that he raised material with it after it was ready for use; and that he was near it and knew that it was being used, at the time of the accident. It appears that he objected to its being chained to an iron beam which had not been properly fastened, and that he may have made suggestions as to the way in which it should be secured, but he had the right to object to any method of securing it which would have endangered unnecessarily the part of the building over which he had control, and what he said more than that in regard to chaining it was in the nature of suggestions which created no obligations on the part of Wakefield, and were without effect to make the company liable. The fact that Wood used the derrick for doing his own work would not make the company liable for it when it was used by another, and Wood had no right to control such use of it; therefore that he knew it was being used to unload stone at the time of the accident is immaterial.

Our conclusions are sustained to some extent by the following authorities: *Callahan v. Railway Co.*, 23 Iowa, 562; *Wood v. School Dist.*, 44 Iowa, 28; *Brown v. McLeish*, 71 Iowa, 381, 32 N. W. Rep. 385; *Miller v. Railway Co.*, 76 Iowa, 656, 39 N. W. Rep. 188; *Water-Supply Co. v. White*, 24 N. E. Rep. (Ind. Sup.) 747; *Railway Co. v. Farver*, 12 N. E. Rep. 296; *Hexamer v. Webb*, 4 N. E. Rep. (N. Y. App.) 755; *King v. Railway Co.*, 66 N. Y. 182; *Kelly v. Mayor, etc.*, 11 N. Y. 432; *Gorham v. Gross*, 125 Mass. 240; *Powell v. Construction Co.*, 88 Tenn. 692, 13 S. W. Rep. 691; *Rogers v. Railroad Co.*, 9 S. E. Rep. (S. C.) 1059; *Hughes v. Railway Co.*, 15 Am. and Eng. R. R. Cases,

100; *Allen v. Willard*, 57 Pa. St. 347; *Reed v. Allegheny City*, 79 Pa. St. 300; *City of Erie v. Caulkins*, 85 Pa. St. 247; *School Dist. v. Fuess*, 98 Pa. St. 601; *Hunt v. Railroad Co.*, 51 Pa. St. 475; *Robinson v. Webb*, 11 Bush, 465; *Edmondson v. Railway Co.*, 2 Atl. Rep. (Pa. Sup.) 404. The appellees cite numerous cases in support of their claim that Wakefield was not an independent contractor, but none of them, in our opinion, are in conflict with the conclusions we have reached. In *Blink v. Hubinger*, 90 Iowa, 642, 57 N. W. Rep. 593, a case specially relied upon by the appellees, the person injured was not an employee of the contractor, but of the defendant, Hubinger, who had agreed to furnish assistance in doing certain work, and the plaintiff and others had been sent pursuant to that agreement to assist in doing the work, and while so engaged received the injury for which he sought to recover. The controlling facts in that case are so different from those involved in these cases that the cases are not governed by the same rules. The court required the jury to determine the relations which existed between Mainland and the company and between Wakefield and the company. In that there was error. The relations were shown by the written agreements, and those should have been construed by the court, which should have instructed the jury in regard to their legal effect.

III. What we have said disposes of all questions which it is necessary for us to determine at this time. Others have been discussed, but they depend chiefly upon the evidence, and may not again arise. On account of the errors we have pointed out, the judgment of the district court is in each case REVERSED.