J. C. LAYTON v. ELBA MANUFACTURING COMPANY.

(Filed 19 March, 1913.)

**Vendor and Vendee—Cotton Seed—"Car-load"—Words and Phrases —Questions for Jury.**

Where the buyer of cotton seed in car-load lots refuses a part of the shipment upon the ground that the seller had overloaded the car in order to get the contract price, upon a declining market, and there was no specification as to the quantity or number of pounds to be shipped as a car-load, and the evidence is conflicting as to the number of pounds meant by a "car-load," the question was properly left to the jury.

APPEAL by defendant from *Ferguson, J.*, at November Term, 1912, of HARNETT.

The defendant purchased from the plaintiff at the price of 57½ cents per bushel three car-loads of cotton seed, to be shipped by rail f. o. b. from Dunn, N. C., plaintiff's home and place of business, to Maxton, N. C., where defendant's mill is located. Two of the car-loads were accepted and paid for by defendant, and the dispute arises as to the third car. Each of the first two cars carried 59,008 pounds of seed, in round numbers, while the third car was loaded at Dunn with 78,800 pounds. At Fayetteville, N. C., while the last car was en route to Maxton, 29,000 pounds of the seed were taken from it and placed in another car. This lot, on arrival at Maxton, was accepted by defendant. The other car, which contained the remainder of the seed, the defendant refused to accept, upon the ground that the car had been purposely overloaded, in order that plaintiff might get the benefit of the contract price for more seed than defendant had agreed to buy, the price of seed having declined. The jury returned the following verdict:

1. Was the quantity of cotton seed shipped in the Southern car No. 40018 greater than a car-load? Answer: No.

2. If so, did excess necessitate a division of the load into separate cars by the railroad company? (No answer.)

3. Did the defendant waive its right to refuse the car-load of seed as shipped? Answer: Yes.

4. In what amount, if any, is the defendant indebted to the plaintiff? Answer: Elba Manufacturing Company due $1,508.41, with interest from 4 October, 1910, to 19 November, 1912."

The defendant offered to pay for the 29,000 pounds of seed at the contract price, which plaintiff refused to accept. There was evidence that a car-load of cotton-seed, as understood in railroad and business circles, ranges all the way from 20,000 pounds to 75,000, or even 90,000, plaintiff testifying that he had shipped a number of cars of seed containing 80,000 pounds and some 90,000 pounds. It was testified that the rated capacity of the last car, No. 40018, in which the 78,700 pounds of seed were shipped, was 60,000 pounds, but that the maximum quantity allowed by the railroad company's rules, to be transported in it, was measured by its rated capacity, or 60,000 pounds, plus 10 per cent thereof, or 66,000 pounds in all. There was other evidence as to the rules and custom in loading cars, with reference to what is considered a car-load, and all of the evidence was submitted to the jury, with an instruction to find what was an ordinary and reasonable car-load, according to the usage and custom and understanding of railroad companies and shippers. Defendant appealed from the judgment upon the verdict.

*N. A. Townsend and E. F. Young for plaintiff.*
*J. C. Clifford and G. B. Patterson for defendant.*

WALKER, J., after stating the case: It was entirely proper for the court to leave the question of what constitutes a "car-load" to the jury. It is not a term of any fixed or definite meaning in the law, but parol testimony was necessary to explain what the parties meant by it. It is a familiar rule that words or terms of doubtful or uncertain meaning may be explained by extrinsic evidence. It is said by a recent text-writer that "testimony as to the nature of the subject-matter referred to in a document, so as to enlighten the court in respect to it, may be given. It very frequently happens that the language of a contract leaves it uncertain to just what the parties referred, and it is impossible for the court to enforce its provisions, or

to compute damages under it, without some explanation." Mc-Kelvey on Evidence, p. 462, sec. 301; 1 Greenleaf on Evidence (14 Ed.), sec. 288. In *Bullock v. Finley,* 28 Fed. Rep., 514, the Court applied the rule we stated above with reference to this very term, "car-load," in the contract then in question, and said: "If nothing was agreed as to the quantity to make a 'car-load,' then the usual and established custom as to quantity in that business and trade, at the time and place of the contract, would fix the quantity meant by a 'car-load' between the parties; and if no such usage or custom is shown, then what a car of usual capacity, used in carrying such freight, could carry, would fix the quantity intended by the parties. In ascertaining what was meant and understood as to quantity, you must consider all the circumstances connected with the transaction between the parties disclosed in the evidence." *Cabinet Co. v. Herrman,* 7 Ind. App., 462. It was held in *Goode v. Railway Co.,* 92 Iowa, 271, that, "when a general custom fixes a 'car-load' at a certain number of pounds, the law presumes that a shipping contract which does not define the term was made with reference to such custom." There was conflicting evidence introduced as to the meaning of the term "car-load" in shipping circles, and it was for the jury to say, under the instructions of the court, what the parties really meant in view of this general custom and usage. It is to be observed, also, that on an average, that is, if the total number of pounds is divided by three, the plaintiff shipped nearly 1,200 pounds less than three car-loads, estimated by the rating of the railroad company, which was 60,000 and 10 per cent added. This is not conclusive on the defendant, but it tends to repel the charge that the plaintiff was overloading the last of the three cars for the purpose of obtaining the contract price for a larger quantity than was bought by the defendant. There was also evidence of a waiver on the part of the defendant of exact compliance by plaintiff, or of facts which amounted to an election to take the last "car-load."

No error.