J. E. HELGESON, Appellee, v. E. B. HIGLEY COMPANY, Appellant.

**Master and servant:** INJURY TO SERVANT: EVIDENCE. Where it appeared that an injury to an employee might as well have happened from some cause for which the master was not responsible as from a cause for which he was liable, a question of negligence on the master's part was not made out; as where an employee was injured by the sudden starting of a freight elevator from which he was unloading goods, and the evidence failed to disclose the cause of its starting, but could be attributed to the act of plaintiff as properly as to the act of the coemployee. The evidence is held insufficient to support a finding that defendant's general manager in charge of the business started the elevator without giving the required warning.

**Same:** WARNING: NEGLIGENCE OF FELLOW SERVANT. Where the master has promulgated the necessary rules about giving employees warning and has instructed all employees to do so, this duty rests upon all of the employees alike; and a failure of one employee engaged in the same common service to perform this duty, which is the only negligence charged, is not chargeable to the master, even though he was of a higher grade than the fellow servant who was injured.

**Assumption of risk:** SUBMISSION OF ISSUE. Where the issue of assumption of risk is tendered by the pleadings and there is evidence to support it the question should be submitted to the jury; but in the instant case failure to submit the issue was not of itself reversible error.

*Appeal from Cerro Gordo District Court.*—HON. C. H. KELLEY, Judge.

THURSDAY, JUNE 16, 1910.

ACTION at law to recover damages for personal injuries received by plaintiff while attempting to operate a freight elevator in a building owned and operated by de-

fendant. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals. *Reversed.*

*Hewitt, Miller & Wallingford* and *C. Woodbridge,* for appellant.

*Blythe, Markley, Rule & Smith* and *Senneff & Bliss,* for appellee.

· DEEMER, C. J.—Defendant is a corporation operating a cold storage warehouse in the city of Mason City. For the purpose of carrying goods and produce from one story to another in this building, it had installed a freight elevator, which was operated by electric power. No system of ·bells or signals was provided, but it promulgated a rule among its employees to the effect that before any of them should move the elevator they must call up or down the shaft to warn other employees of the proposed movement. The case as made by the petition is that plaintiff was employed by defendant on or about November 22, 1906, to work about the warehouse, and;

> That the defendant employed and had in charge of the management of said business a superintendent or manager, and that on, to wit,' the 1st day of December, 1906, the plaintiff was ordered and directed by the said defendant through its superintendent to use and operate said elevator in and about his employment and for the purpose of carrying and conveying certain produce from the basement of said building upward to other floors thereof; that while this plaintiff was carrying out the directions of the defendant and unloading produce from said elevator in the basement, and .while said plaintiff was in the· exercise of due care on his part, he inserted his hand, arm, and a portion of his body over the floor of said elevator as he was required to do under the direction of the defendant, in the performance of his duties, and under· the direction of the ·defendant, through its superintendent, the said defendant through its superintendent negligently,

carelessly, and without regard to its duties owing this plaintiff moved or caused to be moved the said elevator suddenly and without warning to the plaintiff, and in violation to the rules which required call to be made to plaintiff; that the said elevator so moved or caused to be moved by the defendant through its superintendent moved violently and rapidly upward while he so had his hand, arm, and a portion of his body inserted over the floor of said elevator; that said elevator was so drawn upward through the elevator shaft, and plaintiff's hand and arm were caught between the floor of said elevator and the side of said elevator shaft, whereby his arm was mangled, crushed, and torn, and he was thereupon violently thrown upon the floor of said basement.

Other allegations of negligence were made, but this was the only one submitted to the jury. Defendant's answer was a general denial and a plea of assumption of risk. The trial court did not submit the issue of assumption of risk, but submitted the case wholly upon the question of whether O'Keefe, defendant's superintendent, started the elevator without giving any warning, as stated in the petition from which we have quoted. The jury was also properly instructed upon the issue of contributory negligence.

This appeal presents but two matters which will be considered. One is the sufficiency of the testimony to show that O'Keefe started the elevator, and the other the liability of the defendant for the negligence of O'Keefe in the event it be found that he started the elevator without warning. The testimony shows that O'Keefe was defendant's general manager, and had charge of the business at the warehouse when the accident occurred, and it also shows that he properly promulgated rules with reference to giving warning before any of the employees should attempt to move the elevator. It is claimed, however, that he himself violated the rules and started the elevator with-

:1. MASTER AND SERVANT: injury to servant: evidence.

out giving any warning, thus causing the injury of which plaintiff complains. There is no direct testimony as to what started the elevator to move. Plaintiff testified that he did not do it, and O'Keefe was equally positive that he did not. In the building at the time were Griffith, defendant's engineer, and E. B. Higley, president of defendant company, in addition to plaintiff and O'Keefe, and it is not claimed that either Griffith or Higley started the elevator. Plaintiff testified as follows:

I gave a signal by calling into the elevator shaft twice, "elevator down." After that I reached for the rope or cable to start the elevator. When the elevator started up I had not touched the rope. I did not pull any rope there at all. When the elevator started up it is pretty hard to say how rapidly it did go. I tried to get out of it to escape from being caught. It caught my arm just below the elbow between the top of the casing and the door entering into the elevator shaft and the floor of the elevator. I should judge that the floor of the elevator was somewheres about between three and four feet from the floor of the basement where I was standing. The door that leads into the elevator shaft was somewhere from five and one-half to six feet high. . . . After the accident I was coming up the stairs out of the basement. I saw Pete Burke and Mr. Higley. . . . Mr. O'Keefe wanted to know how it happened, and I told him that I was going to use the elevator, and I had hollered for it, and that I reached in and was going to pull the rope and let it down, but that before I got that far somebody else pulled and it went up and caught me. . . . The first rope was probably somewheres around a foot or a foot and a half from the door. The other ropes would be a little further to the other way. I intended to reach for the rope furthest away. . . . The front cable, the one nearest the door, starts the elevator up. It was my intention to start the elevator down. I did not reach or touch any of the ropes there. I did not think there was any way by which that elevator could move up or down unless somebody had moved the ropes. . . . I worked at the plant continuously every day from November 22 until the day I was injured. Dur-

ing my employment I used the elevator quite often. One day I made as many as a dozen trips. A good deal of the time someone was with me. Sometimes I went up alone. I started and stopped it on those occasions. When there was some of the other boys that was working there with me on the elevator I always let them operate it. I could see how they did it. . . . In attempting to reach in there at the time I had my right hand and arm inside. I tried to look in and I saw the ropes. I saw where I was directing my hand. I got my arm in there beyond the elbow. I think the floor of the elevator at that time was probably three to four feet above the floor. The elevator started after I got my hand in there. I had occasion to use this elevator the first day I entered defendant's employ. The man that was working with me did the signaling. He hollered "elevator up" when we started, and then we went up. As we started down he said "elevator down." Mr. O'Keefe told me the first day I was there that that was the way they managed the thing. He told me if I wanted to use the elevator to go down to holler out good and loud. As I used the elevator during those ten days I observed that custom right along.

As already stated, O'Keefe and the other men present stated emphatically that they did not start the elevator. No one seems to know just what caused the elevator to start; and under the issues and the instructions the jury was bound to find that O'Keefe was the man who did it. The only justification for such a finding is a presumption that someone must have started it, and that as O'Keefe was at a place where he might have started it, he is the man who did it, although it is conceded that plaintiff himself was more nearly in a position to start it than anyone else. The doctrine of *res ipsa loquitur* does not apply to the case, and the trial court did not submit the issue on that theory. As the accident may as well have happened from some cause for which defendant was not responsible as from a cause for which it was liable, the mere starting of the elevator affords no proof of defendant's negligence. We are constrained to hold that plaintiff did

not make out a case on the theory in which it was pre-sented to the jury. *Rhines v. Railroad,* 75 Iowa, 597; *Neal v. Railroad,* 129 Iowa, 5; *O'Connor v. Railroad,* 129 Iowa, 636; *Ashbach v. Railroad,* 74 Iowa, 248; *Thayer v. Coal Co.,* 121 Iowa, 121; *Bell v. Clarion,* 113 Iowa, 126.

Moreover, even if the jury had been justified in finding that O'Keefe started the elevator without giving warning, his negligence in so doing was not that of the defendant, the master, but of a servant who at the time was engaged in the same common employment with the plaintiff. The fact that this fellow servant was of a higher grade than plaintiff does not change the rule. In starting the elevator without giving warning O'Keefe was not performing a masterial duty. *Barnicle v. Connor,* 110 Iowa, 238; *Scott v. Chicago G. W. R. R.,* 113 Iowa, 384; *McQueeny v. Ry. Co.,* 120 Iowa, 522; *Wilder v. G. W. Cereal Co.,* 134 Iowa, 451. Defendant had promulgated the necessary rules about giving warning, and had instructed all its employees to do so, and no greater duty of giving warn-ing was imposed upon O'Keefe than upon any other em-ployee who should attempt to use the elevator. O'Keefe was not defendant's *alter ego* in attempting to use the elevator even if he did start it. He was under a like, but no greater, duty to give warning, and his failure to give it can no more be charged to defendant than if some other employee had been guilty of the same neglect. His failure to do so was simply his own negligence for which under well-settled rules of law defendant is not responsible. It is not a case where defendant furnished an unsafe place to work. The place was safe, and only became unsafe when an employee with proper instructions failed to give warning, and did not then become unsafe to everyone in the building, but only to the one who was about to use the elevator. It differs materially from mining cases where

*2. SAME: warn-ing: negli-gence of fel-low servant.*

high explosives are used which makes the place unsafe to all who may be in the mine unless warning is actually given. In such cases the duty to actually give warning is held to be masterial, as in *Hendrickson v. Gypsum Co.*, 133 Iowa, 89; *Jacobson v. Gypsum Co.*, 144 Iowa, 1; *Beresford v. Coal Co.*, 124 Iowa, 34, and other like cases.

Should we hold the master liable for failure to give warning in this case, nothing would remain of the well-established rule, often announced by this court, that for the negligence of a fellow servant the master is not liable. Here we must assume there was no defect in the elevator, no lack of a proper number of efficient servants, no failure to promulgate proper rules, no negligence in failing to instruct plaintiff as to dangers, no failure to provide a reasonably safe place to work, and sufficient appliances. The only negligence charged and submitted was the failure of a servant to give warning and comply with the rules before starting the elevator. This was clearly the negligence of a fellow servant, for which defendant can not be held responsible.

II. We are also constrained to hold that the issue of assumption of risk should under the pleadings and the testimony have been submitted to the jury, although we should not for this reason have reversed the case. The issue was tendered, and there was evidence to support it, and we think the matter should have been submitted to the jury.

3. ASSUMPTION
OF RISK:
submission
of issue.

For the errors pointed out, the judgment must be, and it is, *reversed*.