JOE MANTON, Appellee, v. H. L. STEVENS & COMPANY et al, Appellants.

**TRIAL:** Directed Verdict—Motion for—When Treated in Alternative. The suggestion is offered that occasions may arise when the court will construe a motion demanding a directed verdict in favor of *both* of two defendants, as simply a demand in the alternative,—that is, that one or the other of the defendants be dismissed.

PRINCIPLE APPLIED: Plaintiff was clearly the employee of one or the other of two defendants, M and S, from both of whom damages were claimed by reason of alleged negligence. Both defendants appeared by the same counsel, filed harmonious defenses and, at the close of the evidence, joined in the same motion for a directed verdict for each, M asserting that plaintiff was not *his* employee because S was an independent contractor, and S asserting that plaintiff was not *his* employee because he, S, was the mere agent or supervising architect of M.

The motion was sustained as · to S. The suggestion is offered that this motion should be treated simply as an alternative demand.

**MASTER AND SERVANT:** Respondeat Superior—Independent Contractor—Evidence. An independent contractor, generally speaking, is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer, except as to the result of his work. *Held,* in instant case, an employee was not an independent contractor.

PRINCIPLE APPLIED: An architect was employed to prepare plans and supervise construction for a percentage of actual cost. No specifications were prepared. A general plan was agreed on. Changes, generally on the recommendation of the architect, were made from time to time, and always with the consent of the owner. The owner had full control over all changes. The architect, without assuming any personal liability, entered into many contracts, but always on behalf of the owner by himself as architect. Deliveries under these contracts were to meet the approval of the architect. The recommendations of the architect were never overruled. All items of cost, both for labor and material, were controlled by the owner. All bills were paid for by the owner on approval by the architect. *Held,* the architect was not an independent contractor.

**MASTER AND SERVANT:** Safe Place—Duty to Keep Safe—Surrounding Work of Master. A safe place is not rendered legally unsafe by the negligence of a fellow servant. But the negligence of the master is a different matter. A safe place may be rendered unsafe by the act of the master in carrying on other work near by. The master must furnish a reasonably safe place. He must then keep it reasonably safe.

PRINCIPLE APPLIED: A master was erecting a cement structure with outer brick walls. A servant was laying brick on this wall near the bottom thereof. Without more, the place was safe. The master, through his foreman, sent workmen to the sixth floor, immediately over the bricklayer below, to tear away the wooden forms from the cement columns and beams. In doing this work, chunks of cement were necessarily, in places, torn loose. A piece of this cement fell upon the servant on the wall below, with resulting injury. *Held,* the master was responsible for the resulting unsafety of the place, even though the workmen on the upper floor were not negligent in their work.

**MASTER AND SERVANT:** Safe Place—Duty to Keep Safe—Act of Foreman—Vice-Principal. When the *time* and *place* of doing certain work in one place vitally affect the safety of another place in which other servants are employed, the act of a foreman in directing such work to be done at a certain time and place is the act of the master.

PRINCIPLE ·APPLIED:   (See under No. 3.)

**TRIAL:** Inapt Instruction—Assumption of Fact. The assumption of a fact in issue is, of course, erroneous, but an inapt instruction, assuming that a certain fact has been established, may be cured by a subsequent instruction clearly stating the burden of proof as to such fact.

**EVIDENCE:** Future Disability—Expert Opinion on Probability—Reasonable Certainty. A physician may testify as to *probable* future disability, even though the jury, as a finality, must meet the legal formula: ''What future disabilities are *reasonably certain?*''

*Appeal from Woodbury District Court.*—HON. JOHN F. OLIVER, Judge.

FRIDAY, JUNE 18, 1915.

ACTION for damages by employee against employer for personal injuries resulting from alleged negligence of the employer. The defense was a general denial and a plea of contributory negligence. There was a verdict for the plaintiff and the defendants appeal.—*Affirmed.*

*D. C. Browning* and *Henderson & Fribourg,* for appellee.

*F. E. Gill* and *Sargent, Strong & Struble,* for appellants.

EVANS, J.—The accident in question occurred in June, 1912. The plaintiff, a brick mason, was then engaged in his line of work upon one of the brick walls of a structure then in course of construction at Sioux City for the defendants Martin. The building in course of construction was a large fireproof hotel to be constructed largely of re-enforced concrete. Prior to the date of the accident, the concrete work

upon this building had been completed to a height of several
stories. This concrete work included framework and sup-
ports and floors. It did not include the outside .walls. These
were to be built of brick. On the date of the accident, the
plaintiff was engaged in laying brick in the construction of
the outside east wall near the ground. While so engaged,
he was severely injured on the head in some manner. His
claim is that he was struck from above by a piece of hard-
ened concrete. His skull was fractured by the blow. The
evidence tends to show that at this time a wrecking gang in
charge of one Anderson as an alleged foreman was at work
upon the sixth floor. The duties of this gang consisted in
removing the wooden forms after the concrete had set and
hardened in its place. This work involved the breaking and
loosening of more or less of the hardened concrete. That is
to say, the timber forms became more or less imbedded in
and clasped by the soft concrete, and could not be removed
without breaking such clasp. The claim for the plaintiff is
that one of these broken pieces of concrete fell upon him
while he was engaged in his work. His claim of negligence
is predicated upon the general specification that his employer
failed to furnish him a reasonably safe place to work and
failed to warn him of the danger overhead.

The two defendants Martin were the owners of the real
estate and the building in course of construction. The de-
fendants Stevens & Company were architects and engineers
and were in general charge of the construction of the build-
ing under and by virtue of an oral contract with the Martins.
At the close of the evidence, the trial court dismissed the
case as to them on the ground that they appeared to have
been agents only for the Martins, and that their relation to
the work was that of supervising architects and engineers.
It is now urged by the Martins that Stevens & Company
were independent contractors and were in charge of the con-
struction of the building as such and that the plaintiff was
their servant and employee and not the employee of the

Martins; and this is one of the questions presented for our consideration.

Other defensive contentions are that the evidence was insufficient to show that the plaintiff was injured in the manner claimed; that if he was thus injured, then the injury resulted from the negligence of his fellow workmen; that plaintiff's place of work was reasonably safe within the meaning of the law and that the danger, if any, to which he was subjected therein was transitory only and was due to the progress of the work in which he and his fellow workmen were engaged; and that the employer was therefore not responsible therefor.

I. It is earnestly urged here that the trial court should have held as a matter of law that Stevens & Company were independent contractors and that the plaintiff was their employee and not that of the Martins and that

1. TRIAL: directed verdict: motion for: when treated in alternative.

a verdict should have been directed for the Martins on that ground. This ground has been pressed more vigorously in this court than in the court below. The defendants were all represented in the court below by the same counsel. All of the defendants joined in a harmonious defense. The question as now presented is not specifically raised in the answer of the Martins except as it might be deemed covered by a general denial. At the close of the plaintiff's evidence, all the defendants joined in a motion for a directed verdict. This motion, being first overruled, was, at the close of all the evidence, sustained as to Stevens & Company on the ground already indicated. After this ruling, the record shows oral insistence by counsel on behalf of the Martins that the plaintiff was not their employee. The question was thereupon submitted to the jury as a disputed question of fact. The point now urged is that the trial court should have held as a matter of law that the plaintiff was not the employee of the Martins. We incline to the view that the defendants are in no position upon this record to raise such question. Their attitude before the trial

court would seem to forbid it. The final substituted answer which they filed set forth not only a defense in their own behalf but a defense also in express terms in behalf of Stevens & Company. Clearly the plaintiff was an employee of one or the other of the defendants thus named. The court could not have directed a verdict on this ground in favor of all of the defendants. The sustaining of the motion as to Stevens & Company necessarily held the Martins as the employer of the plaintiff. To dismiss the action as to the Martins would necessarily hold Stevens & Company as the employer. Inasmuch as the defendants all joined in the same motion on the same ground and were represented therein by the same counsel, there is much reason for saying that the prayer of such motion should have been deemed as in the alternative and as a demand that the action be dismissed either as to the Martins or as to Stevens & Company. Otherwise, it puts counsel in an inconsistent position in contending first that the plaintiff was not an employee of Stevens & Company; and second, that he was not the employee of the Martins. The only possible ground for the first contention would be that he was the employee of the Martins; and the only possible ground for the second contention would be that he was the employee of Stevens & Company.

Passing this question, however, we have gone into the original merits of the question. We reach the conclusion that the evidence is abundant to warrant the finding that Stevens & Company were not independent contractors in their relation to this structure but that they sustained the relation of agents to the Martins and that their power and duties were those of the architect and the engineer, coupled, perhaps, with a supervisory power under which they superintended the enterprise in its entirety.

2. MASTER AND
SERVANT:
*respondeat
superior:* independent contractor: evidence.

There was no written contract between them and the Martins. Their oral agreement was brief and somewhat general. Stevens testified to it as follows:

"We were employed to prepare plans and supervise the construction of this building. That was the entire contract with the exception of the agreement that fixed our compensation."

The compensation agreed on was 10 per cent of the actual cost of the building. Originally, the building was estimated at an approximate cost of $250,000. No specifications were prepared, though a general plan was agreed on. Changes were made from time to time. These were generally upon the recommendation of the architects and always with the consent of the Martins. Stevens & Company entered into many subcontracts for material and labor. Some of these were in writing. They all purported to be made on behalf of the Martins by Stevens & Company as architects. In none of them did Stevens & Company assume personal liability. Stress is laid by appellant on the fact that in some of these contracts it was required that the deliveries thereunder should meet the approval of Stevens & Company. It is argued that this provision discloses their interest therein as contractors. The provision is entirely consistent with a contrary view. It was appropriate and consistent to make such provision for the benefit of the Martins. The very purpose of their employment of Stevens & Company as architects and engineers and superintendents was that they might have the benefit of their experience, knowledge and judgment. It was entirely consistent, therefore, that the contracts in their behalf should meet the approval of Stevens & Company as a condition precedent to acceptance.

We think the case at this point quite controlled by our previous case of *Hughbanks v. Investment Co.*, 92 Iowa 267. In its controlling facts in this regard, the case at bar is not materially different from the cited case.

Some stress is laid by appellant upon the fact that the recommendations of Stevens & Company were followed in every case throughout the construction of the building, and

that at no time did the Martins overrule or change such rec-
ommendations.  It is argued, therefore, that Stevens & Com-
pany did have the actual control of the method of construc-
tion.  The question at this point is not so much what the
Martins did do in that regard as what they had a right to do.
It is undisputed that every item of cost, both for labor and
material, was incurred under the eye of the Martins.  They
kept a daily itemized statement of all expenditures for both
labor and material, including the names of the men upon
the pay roll, and paid the same upon the approval of the
architects.  There is nothing in the record which would war-
rant a holding that they were bound to Stevens & Company
by any other contract than the contract for compensation at
the rate of 10 per cent.  They were free to increase or reduce
the cost; to follow the original plans or to change them.
Their right in this respect was not affected by the fact that
no friction or difference of opinion arose between them and
their architects in the prosecution of the work.  We are clear,
therefore, that the plaintiff herein must be deemed the em-
ployee of the Martins, and not that of Stevens & Company.

II.  It is next urged that there was no evidence of any
negligence on the part of the employer upon which the action
could be predicated.  The argument is that if the plaintiff
was injured, as claimed, by a piece of con-

**3.  Master and servant: safe place: duty to keep safe: surrounding work of master.**
crete from the wrecking operations on the
sixth floor, then he was injured by the negli-
gence of his fellow workmen and the em-
ployer is not liable therefor.  In such case,
it is said no failure to furnish a reasonably safe place to work
is shown.  The argument at this point is made to rest largely
upon a class of cases such as *Galloway v. Turner Imp. Co.,*
148 Iowa 93; *Scherer v. Alfalfa Meal Co.,* 159 Iowa 683;
*Helgeson v. Higley Co.,* 148 Iowa 587; *Peterson v. C. R. I.
& P. Ry. Co.,* 149 Iowa 496.

In the cited cases, it was held that a place to work which
was, in itself and in its relation to its surroundings, safe,

was not rendered legally unsafe simply because injury happened therein to the plaintiff through the negligent act of some fellow workman.

For instance, in some of the cases machinery was negligently started by a fellow workman without warning to the injured party. It was held that this did not present a case of an unsafe place to work and that the duty of the master to warn did not apply to the transitory changes that necessarily attended the progress of the work.

We need not repeat the discussion and the distinctions presented in the cited cases. We think they are not applicable to the case before us. In putting the plaintiff to work upon the ground wall he was exposed to the danger of falling material from the wrecking gang on the sixth floor. Whether he should have discovered the danger himself was a question of fact, which was appropriately submitted to the jury. In that respect, the place was unsafe. If it must be said that, in the absence of negligence by a fellow workman, the place was safe, and that only the negligence of a fellow workman would render it unsafe, then the place was safe within the meaning of the law and the defendants were not liable for the injury. The trial court instructed in substance to this effect. It instructed that the workmen of the wrecking gang were fellow workmen of the plaintiff. It instructed further that if the negligence of any one of them caused the injury to the plaintiff, then the defendants were not liable. It is clear from the evidence that there was no necessary negligence on the part of the workmen in the wrecking gang in causing the falling material. The evidence sustains the finding that they were engaged in their regular work and in the regular way and under appropriate instructions from superior authority. The nature and requirements of the work were such that more or less falling material was inevitable, even with ordinary care on their part. They were charged with no knowledge of the presence of plaintiff in an exposed place

upon the lower level. Under the instructions of the court, the jury necessarily found that the place of plaintiff's work was unsafe by reason of the operations on the sixth floor, notwithstanding the use of ordinary care by the fellow workmen. We think the evidence sufficient to sustain such a finding. Inasmuch, therefore, as the defendants worked these men upon the different levels, it was incumbent upon them to make the plaintiff's place of work reasonably safe from the danger of such falling material as would likely come upon it notwithstanding the exercise of ordinary care by the workmen above. Whether that could best be done by providing a shield above the plaintiff or by refusing to permit the men to be worked upon the different levels at the same time in such a way as to expose the one or the other to danger is not a question before us. Under the facts found by the jury, the plaintiff's place of work was not safe within the meaning of the law, even though it would have been safe if the wrecking gang had not been engaged above it.

The case is somewhat analogous in principle to those cases involving the use of high explosives in mines and pits. *Hendrickson v. Gypsum Co.*, 133 Iowa 89. The general ground of the holding in that class of cases is that a place of work otherwise safe is rendered unsafe by the use of high explosives and that the workman has no means of protecting himself therein. He is therefore entitled to warning of the use of the high explosives, in order that he may absent himself from the place of work while it is exposed to the danger of the explosive. See *Galloway v. Turner Improvement Co.*, 148 Iowa 93, 99.

In the case before us, the only effective way in which the plaintiff could have protected himself in case he had been warned would have been to absent himself from such place of work while the wrecking gang was at work upon the upper floor.

III. The alleged foreman of the wrecking gang was one Anderson. It is earnestly urged by the appellant that he

was not in truth such foreman; that he had, in fact, no author-
ity as such, though he wrongfully assumed it.

**4. MASTER AND SERVANT: safe place: duty to keep safe: act of foreman: vice-principal.** It is argued, therefore, that he was a mere workman and therefore a fellow workman with the plaintiff, and that it was negligence on his part to assume to order the wrecking gang upon the sixth floor while the plaintiff was at work below, and that, therefore, the defendants were not responsi-
ble for his negligence. The finding of the jury was neces-
sarily adverse to this contention. It is sufficient to say that
evidence of Anderson's authority as a foreman was abundant
to sustain such finding. The workmen exercised no discretion
as to the time or place of their work but were subject to
superior authority. The time and place of work of the wreck-
ing gang entered vitally into the character of the plaintiff's
place of work in regard to its safety. In view of the duty
of the master to render plaintiff's place of work reasonably
safe, the magisterial duty of supervision of the time and place
of the wrecking work would seem to follow of necessity so
far as such work affected the safety of plaintiff's place of
work. We think, therefore, that Foreman Anderson must
be deemed as a vice-principal, in so far as he selected and
ordered the time and place of the wrecking work upon the
sixth floor, whereby the plaintiff's place of work was exposed
below.

Somewhat in point here is the case of *Hamm v. Betten-
dorf*, 147 Iowa 681. Appellants cite some authorities at this
point which tend to sustain their position. *Somer v. Harri-
son*, 8 Atl. 799; *Donnelly v. San Francisco Bridge Co.*, 49
Pac. 559; *McPhee v. Scully*, 39 N. E. 1007; *Lach v. Burnham
et al.*, 134 Fed. 688. In so far as the foregoing cases hold
that the workmen on the upper floor were fellow workmen
with the plaintiff and that the master was not liable for their
negligence, we are in accord with them. In so far as they
regard the foreman or superintendent as performing no
magisterial duty under the circumstances shown herein, they

are not in harmony with what we deem the sounder rule and which we have followed in our previous cases.

IV. It is urged that the evidence was wholly insufficient to sustain a finding that the plaintiff was injured by any falling material from the sixth floor. There was some evidence tending to show that workmen were engaged upon the seventh floor in performance of the contract of some subcontractor. It is argued that the cause of the plaintiff's injury could have originated from this floor as easily as from the sixth floor, and that the evidence introduced is as consistent with one theory as with the other. The evidence was by no means conclusive that there was any work in operation on the seventh floor. The evidence is sufficient to warrant a finding by the jury that plaintiff's injury was caused by a piece of hardened cement. It also appears that the breaking of such pieces was an ordinary incident of the wrecking work which was going on upon the sixth floor. Candor could hardly reach any other conclusion than that reached by the jury at this point. It is needless to say, therefore, that we think the evidence sufficient.

5. TRIAL: inapt instruction: assumption of fact.          V. Complaint is made against instruction 4 given by the trial court. The complaint is directed to the introductory sentence of such instruction which was as follows:

"Par. 4. It appears from the evidence, that about the 13th day of June, 1912, the plaintiff while employed and engaged in working as a brickmason in laying the first story of a brick wall of a two-story addition that was being constructed and attached to one of the wings of said Martin hotel, then under process of building, was injured as a result of being struck upon the head by a piece of hardened concrete, or some other object, that had fallen from some portion of said wing of said hotel building, near which he was working upon said wall."

The complaint is that the sentence assumed a fact as proven, whereas such fact was in dispute. Such introductory sentence was followed in such instruction by the following direction:

"And as you have already been told, to entitle him to recover anything on account of said injuries, he must satsify you by a preponderance of the evidence that said injuries were caused by a falling piece of concrete that had been loosened or detached or broken either from some portion of the concrete work of the sixth story of the structure near which he was working, etc."

The introductory statement, "It appears from the evidence," was doubtless somewhat inapt. From the instruction as a whole, however, the meaning of the court is rendered quite plain. This expression was used in the sense that there was evidence to such effect. The second sentence of the instruction which we have quoted above expressly charged the jury that the burden of the proof as to such fact was upon the plaintiff. We think, therefore, that the appellant is without ground of complaint at this point.

VI. The doctors who attended the plaintiff were examined as witnesses in his behalf. They described the injury and the surgical operation which had been rendered necessary thereby. There was a fracture of the skull upon the top of the head and a surgical operation which removed a part of the skull bone and some of the brain tissue. They testified in effect that there could never be a complete recovery from the condition thus described. Neither the bone nor the excised brain tissue could ever be replaced. Dr. Welch testified also as follows, over the objection of the defendants:

6. EVIDENCE: future disability: expert opinion on probability: reasonable certainty.

"The probable effect will be that this man will continue in a state of nervous and physical debility, more than likely

to become epileptic and possibly insane or demented. . . . The chances, according to statistics, is about five per cent. I mean 20 out of 100 who sustain such injuries become subject to epilepsy, insanity or some form of dementia.''

Similar testimony was given by Dr. Jepson. The objection to this testimony is now urged upon our attention. The ground of objection is that the evidence only went to the ''probable'' effect, whereas the jury could allow compensation only for such future disability as was reasonably certain.

Manifestly, the criterion contended for by the appellant is the proper rule to lay before the jury. Such was the rule given by the trial court. It does not follow, however, that the testimony of a physician must respond to this language to be rendered admissible. The physician, as a witness, was required to go no further in his statement than his candid opinion would warrant. The question of what disability the plaintiff was reasonably certain to suffer in the future still remained as the final question for the jury in the light of all the testimony in the case. No complaint is made of the form of the instruction to the jury at this point. We only hold, therefore, that the testimony complained of was admissible. There is the further consideration here that the verdict actually rendered was a very moderate one in the light of the testimony. If, therefore, the testimony complained of were technically objectionable, it would appear to have been quite nonprejudicial.

The foregoing comprise the principal questions presented for our consideration. We find no error in the record. The record as a whole impresses us with the fairness of the trial. The injury to the plaintiff was severe. The verdict is moderate. The liability of the defendants is almost conclusive under the evidence. The judgment of the lower court is therefore—*Affirmed*.

DEEMER, C. J., WEAVER and PRESTON, JJ., concur.