**CANTON LUTHERAN CHURCH, a
South Dakota Corporation,
Plaintiff,**

v.

**SOVIK, MATHRE, SATHRUM & QUAN-
BECK, a Minnesota Corporation, and W.
A. Kepp & Sons, a Company, Defendants.**

**Civ. No. 79–4068.**

United States District Court,
D. South Dakota, S. D.

Feb. 13, 1981.

Jeffrey P. Masten, of Masten, Myrabo & Irons, Canton, S. D., for plaintiff; William D. Kunstle, Canton, S. D., on the brief.

Clyde F. Anderson, of Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn., for defendant Sovik, Mathre, Sathrum & Quanbeck.

Deming Smith, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for defendant W. A. Kepp & Sons.

## MEMORANDUM DECISION AND ORDER

NICHOL, Senior Judge.

### PROCEDURAL HISTORY

This action was originally filed by the plaintiff, Canton Lutheran Church, in First Judicial Circuit Court, Lincoln County, South Dakota. It was removed to federal court by the defendant W. A. Kepp & Sons. Subsequent to the removal, defendants W. A. Kepp & Sons and Sovik, Mathre, Sathrum & Quanbeck each filed a motion for summary judgment on the basis that "the statute of limitations provided by South Dakota law in SDCL 15–2–9 for action for deficiencies in construction of a building has expired."

Plaintiff countered with the argument that the statute is unconstitutional and maintains that even if it is constitutional the statute was tolled by the fraudulent concealment of the defendants or because the defendants were without the jurisdiction of the state pursuant to SDCL 15–2–20.

Plaintiff then moved for partial summary judgment "dismissing and striking out that part of the answer of each of the defendants which is based upon a defense of the bar of statute of limitations for building deficiencies or a purported 'General Statute of Limitations.'"

### FACTS

Prior to June 3, 1960, plaintiff, Canton Lutheran Church, made plans to construct an educational building addition to its principal structure.

On June 3, 1960, plaintiff and defendant Sovik, Mathre, Sathrum & Quanbeck (hereinafter referred to as defendant architect) entered into a contract for professional architectural services for the educational building addition.

On August 18, 1961, plaintiff and defendant W.A. Kepp & Sons (hereinafter referred to as defendant contractor) entered into a contract for the construction of the educational building addition. Defendant contractor agreed to furnish all materials and construct the educational building in accordance with certain specifications drawn by defendant architect.

Pursuant to the above contracts, plans were drawn and construction commenced. Defendant architect gave its certificate of substantial completion on or about October 8, 1963.

In the spring of 1977, plaintiff observed cracks in the exterior structural concrete of the education building addition. After the defects were first noticed in the spring of 1977, tests of the structural concrete in the educational building were made at plaintiff's request. The results of the tests, conducted by Twin City Testing and Engineering Laboratory, Inc., indicated the presence of calcium chloride in the educational building addition concrete. Calcium chloride, when added to concrete, will cause the concrete to set up faster in cold weather.

The architectural specifications for the concrete in the educational building addition set forth in detail the mixing, pouring, and curing criteria for the concrete and did not call for, or authorize, the use of calcium chloride.

In a report on the cracks in the concrete to Maynard Lintvedt, President of the Canton Lutheran Church Congregation, by defendant architect it was their conclusion that the cracking condition was unusual and severe and:

> due to corrosion of the corner reinforcing bars, causing residue or by-product which creates internal pressure in the surrounding concrete resulting in splitting of the concrete. Moisture by itself in the concrete would not have caused this extensive corrosion. However, the additional presence of calcium chloride would create the chemical environment which would allow corrosion of the steel to take place.

As a result, plaintiff commenced this action in the spring of 1979, alleging breach of warranty, negligent supervision by defendant architect, breach of contract and fraud.

Both defendants have raised SDCL 15–2–9, "Limitation of action for deficiencies in construction of building" as a defense.

## STATUTORY BACKGROUND

SDCL 15–2–9 through 15–2–12 are patterned after the Model Code proposed by various associations of design professionals and contractors. These statutes were a response by the associations to major extensions in the sixties of their members' potential liability. *Watts v. Putnam County*, 525 S.W.2d 488 (Tenn.1975). Similar statutes have been adopted in at least 42 states. *Phillips v. ABC Builders, Inc.*, 611 P.2d 821 (Wyo.1980).

The statute bars any action for personal injury or death or for any injury to real or personal property "arising out of any deficiency in the design, planning, supervision, inspection and observation of construction, or construction of an improvement to real property" not brought within six years after the date the owner can occupy or use the improvement.[1] SDCL 15–2–9. There is, however, a one year grace period in which an action may be brought for those injuries occurring in the sixth year after completion. SDCL 15–2–11. The statute is not a conventional limitation provision. Unlike other statutes of limitations, it is entirely unrelated to the accrual of any cause of action; the period beginning to

---

1. The statute was originally adopted in 1966 with a ten year limitation period. 1966 S.D. Sess.L., Ch. 117. In 1978 the time period for bringing suit was reduced to six years. 1978 S.D.Sess.L.Ch. 144. It is unnecessary to decide which time period applies as both periods have run.

run on the date of substantial completion, rather than the date of injury, damage, or discovery. SDCL 15–2–9. *Cf.* Generally SDCL Ch. 15–2. In fact, it has been said that the statute "does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action from ever arising." *Rosenberg v. Town of North Bergen,* 61 N.J. 190, 293 A.2d 662 (1972). If this, in fact, is the effect of the statute, it would be inconsistent with existing case law of the United States Supreme Court[2], the Eighth Circuit Court of Appeals[3], and the South Dakota Supreme Court[4].

The statute is obviously strong medicine, and as one would expect, has been the subject of considerable discussion[5] and litigation. At least 28 courts have ruled on the constitutionality of statutes similar to SDCL 15–2–9.

In 12 cases the statutes have been upheld. Arkansas, *Carter v. Hartenstein,* 248 Ark. 1172, 455 S.W.2d 918 (1970); Louisiana, *Burnmaster v. Gravity Drainage District No. 2 of Parish of St. Charles, La.,* 366 So.2d 1381 (La.1978); Montana, *Reeves v. Ille Electric Co.,* 170 Mont. 104, 551 P.2d 647 (1976); New Jersey, *Rosenburg v. Town of North Bergen,* 61 N.J. 190, 293 A.2d 662 (1972); *O'Connor v. Altus,* 67 N.J. 106, 335 A.2d 545 (1975); New Mexico, *Howell v.*

*Burk,* 90 N.M. 688, 568 P.2d 217 (1977), *cert. den.* 91 N.M. 3, 569 P.2d 413; Oregon, *Joseph v. Burns,* 260 Or. 493, 491 P.2d 203 (1971); Pennsylvania, *Freezer Storage, Inc. v. Armstrong Cork Co.,* 234 Pa.Super. 441, 341 A.2d 184 (1975); Tennessee, *Agus v. Future Chattanooga Development Corp.,* 358 F.Supp. 246 (E.D.Tenn.1973), cited with approval, *Watts v. Putnam Co.,* 525 S.W.2d 488 (Tenn.1975); Texas, *Hill v. Forrest & Cotton, Inc.,* 555 S.W.2d 145 (Tex.Civ.App. 1977); Utah, *Good v. Christensen,* 527 P.2d 223 (Utah 1974); Virginia, *Smith v. Allen-Bradley Co.,* 371 F.Supp. 698 (W.D.Va. 1974); Washington, *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.,* 81 Wash.2d 528, 503 P.2d 108 (1972).

In 11 states similar statutes have been held unconstitutional. Alabama, *Bagby Elev. & Elec. Co., Inc. v. McBride,* 292 Ala. 191, 291 So.2d 306 (1974); *Plant v. R. L. Reid, Inc.,* 294 Ala. 155, 313 So.2d 518 (1975); Florida, *Overland Construction Co., Inc. v. Sirmons,* Fla., 369 So.2d 572 (1979); Hawaii, *Fujioka v. Kam,* 55 Haw. 7, 514 P.2d 568 (1973); Illinois, *Skinner v. Anderson,* 38 Ill.2d 455, 231 N.E.2d 588 (1967); Kentucky, *Saylor v. Hall,* 497 S.W.2d 218 (Ky.1973); Michigan, *Muzar v. Metro Town Houses, Inc.,* 82 Mich.App. 368, 266 N.W.2d 850 (1978); *but see, Bouser v. City of Lin-*

**2.** It may be properly conceded that all statutes of limitations must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions. *Wilson v. Iseminger,* 185 U.S. 55, 22 S.Ct. 573, 46 L.Ed. 804 (1902). "The statute of limitations will not be allowed to commence to run against a right until that right has accrued in a shape to be effectually enforced." *Burer v. Chapman,* 119 U.S. 587, 7 S.Ct. 342, 30 L.Ed. 532 (1887). *See also, Felix v. Patrick,* 145 U.S. 317, 12 S.Ct. 862, 36 L.Ed. 719 (1892). *Norris v. Haggin,* 136 U.S. 386, 10 S.Ct. 942, 34 L.Ed. 424 (1890). *Avery v. Cleary,* 132 U.S. 604, 10 S.Ct. 220, 33 L.Ed. 469 (1890). *Upton v. McLaughlin,* 105 U.S. 640, 26 L.Ed. 1197 (1881).

**3.** "Nothing could be more unreasonable or more certainly violative of constitutional prohibitions than to bar rights of action because of

the lapse of time prior to their accrual, when they could not have been exercised." *Lamb v. Powder River Livestock Co.,* 132 F. 434 (8th Cir. 1904).

**4.** "A civil action can be commenced only within the period prescribed by the applicable statute of limitations after the cause of action shall have accrued." *In re Swanson's Estate,* 73 S.D. 293, 42 N.W.2d 228 (1950).

**5.** Except in topsy-turvy land, you can't die before you are conceived, or be divorced before you ever marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a nonexistent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of legal "axiom," that a statute of limitations does not begin to run against a cause of action before that cause of action exists, *i. e.,* before a judicial remedy is available to the plaintiff. *Dincher v. Marlin,* 198 F.2d 821 (2nd Cir. 1952) (dissenting opinion).

coln Park, 83 Mich.App. 167, 268 N.W.2d 332 (1978); *O'Brien v. Hazelet & Erdal Consulting Engineers*, 84 Mich.App. 764, 270 N.W.2d 690 (1978); Minnesota, *Pacific Indemnity Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548 (Minn.1977); Oklahoma, *Loyal Order of Moose Lodge 1785 v. Cavaness*, 563 P.2d 143 (Okl.1977); South Carolina, *Broome v. Truluck*, 270 S.D. 227, 241 S.E.2d 739 (1978); Wisconsin, *Kallas Millwork Corp. v. Square D. Co.*, 66 Wis.2d 382, 225 N.W.2d 454 (1975); Wyoming, *Phillips v. ABC Builders, Inc.*, Wyo., 611 P.2d 821 (1980).

In five states the statute has been interpreted without any discussion of its constitutionality or has been decided on other grounds. California, *Regents of University of California v. Hartford Accident & Indemnity Co.*, 21 Cal.3d 624, 147 Cal.Rptr. 486, 581 P.2d 197 (1978), vacating an intermediate appellate court decision which had held the statute constitutional, *Regents of University of California v. Hartford Accident & Indemnity Co.*, 131 Cal.Rptr. 112, 59 Cal.App.3d 675; Colorado, *Duncan v. Schuster-Graham Homes, Inc.*, 194 Colo. 441, 578 P.2d 637 (1978), *but see, City of Aurora, Colorado v. Bechtel Corp.*, 599 F.2d 382 (10th Cir. 1979); Maryland, *Allentown Plaza Associates v. Suburban Propane Gas Corp.*, 43 Md.App. 337, 405 A.2d 326 (1979); Nevada, *Nevada Lakeshore Co., Inc. v. Diamond Electric, Inc.*, 89 Nev. 293, 511 P.2d 113 (1973); New Hampshire, *Deschamps v. Camp Dresser & McKee, Inc.*, 113 N.H. 344, 306 A.2d 771 (1973).

The cases that have held the statute unconstitutional have found, generally, that individuals excluded from the protected class, *e. g.* owners and materialmen, are similarly situated with design professionals and contractors. Under this analysis the classifications have been determined to be unreasonable and thus a denial of equal protection.[6]

The decisions upholding the statute have, of course, found a reasonable basis for the classification. It has been noted, however, that most of the decisions taking this view provide little or no explanation for the result reached. *Howell v. Burk*, 90 N.M. 688, 568 P.2d 214 (1977).

## ISSUES

Briefly stated, the issues in this case are as follows:

—Is SDCL 15–2–9 constitutional?

—Was SDCL 15–2–9 tolled by the presence of fraud or fraudulent concealment?

—Was SDCL 15–2–9 tolled, pursuant to 15–2–20, by the absence of defendants from the state?

—Is SDCL 15–2–9 applicable for damage to the improvement itself?

—Does the statute apply because the contract and the improvement were completed before the statute became effective?

## CONSTITUTIONALITY

■ The court's resolution of the difficult constitutional issue is limited by the well established doctrine of judicial restraint. Federal courts do not "anticipate a question of constitutional law in advance of the necessity of deciding it" nor "decide questions of a constitutional nature unless absolutely necessary to a decision of the case." *Ashwander v. T. V. A.*, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., Concurring); *Sullivan v. Meade Independent School District No. 101*, 530 F.2d 799 (8th Cir. 1976). This is also the policy of the South Dakota Supreme Court. *Aberdeen Educational Assn. v. Aberdeen Board*

---

**6.** The S.D.Constitutional provisions at issue are: Art. III, section 23; Art. VI, section 2; Art. VI, section 12; Art. VI, section 18; Art. VI, section 20. This court notes with interest that Wyoming, which recently declared its statute unconstitutional, uses the same "no reasonable doubt standard" for unconstitutionality as South Dakota. *See Phillips v. ABC Builders*, Wyo., 611 P.2d 821 (1980). *State Theater v. Smith*, 276 N.W.2d 259 (S.D.1979). *Matter of Certain Territorial Electric Boundaries v. Northwestern Public Service Company*, 281 N.W.2d 65 (S.D.1979). *Aberdeen Educational Association v. Aberdeen Board of Education*, 215 N.W.2d 837 (S.D.1974).

*of Education*, 215 N.W.2d 837 (S.D.1974); *House of Seagrams, Inc. v. Assam Drug Co.*, 83 S.D. 320, 159 N.W.2d 210 (1968). This court must therefore carefully examine the issues to determine whether the constitutional questions present here must be resolved. Accordingly, we first turn to the issue of the tolling of the statute by fraud or fraudulent concealment.

## TOLLING OF STATUTE

### I. Fraudulent Concealment

In the contract defendant architect agreed to perform certain professional services as follows:

> Necessary conferences, the preparation of preliminary studies, working drawings, specifications, large scale and full size detail drawings, for architectural, structural, plumbing, heating, electrical and other mechanical work; assistance in the drafting of forms of proposals and contracts; the issuance of certificates of payment; the keeping of accounts, the general administration of the business and supervision of the work.

Further, defendant architect agreed to guard the plaintiff against defects and deficiencies in the work of the contractor through general supervision of the construction.

■ This relationship between an architect and the person for whom the work is being done as far as the preparation of plans is concerned, is generally characterized as that of an independent contractor. 5 Am.Jur.2d *Architects* section 6. With respect to the performance of his supervisory functions, however, he ordinarily acts as the agent and representative of the person ... for whom the work is being done. *Fuchs v. Parsons Construction Co.*, 172 Neb. 719, 111 N.W.2d 727 (1961); *Manton v. H. L. Steven & Co.*, 170 Iowa 495, 153 N.W. 87 (1915); 19 A.L.R. 259, 19 A.L.R. 1181, 5 Am.Jur.2d *Architects* section 6.

■ The nature of this relationship between an architect employed to furnish plans and superintend construction and his employer ... is one of trust and confidence. 5 Am.Jur.2d *Architects* section 7. This position finds support in South Dakota law as well. South Dakota law defines fiduciary as, among other things, an agent. SDCL 55–7–2. Statutory definitions used in one chapter are applicable to the same word or phrase wherever it occurs. SDCL 2–14–4. Thus, it follows that an architect-employer relationship under South Dakota law is a fiduciary relationship; particularly where, as in the instant case, the architect agreed to guard the plaintiff against defects and deficiencies in the work of the contractor through general supervision of the construction work.

■ South Dakota has long recognized the doctrine of fraudulent concealment as an exception to statute of limitation defenses. *Hinkle v. Hargens*, 76 S.D. 520, 81 N.W.2d 888 (1957). In *Hinkle* the court recognized that "fraudulent concealment of a cause of action tolls the statute of limitations until the cause of action is discovered or might have been discovered by the exercise of diligence." *Hinkle, supra*, 81 N.W.2d at 890.

■ While the burden is on the plaintiff to prove that the defendant fraudulently concealed the cause of action and the plaintiff exercised diligence in discovery, the South Dakota Supreme Court concluded that where "a trust or other confidential relationship does exist between the parties, silence on the part of one having the duty to disclose constitutes fraudulent concealment in the absence of any affirmative act." *Hinkle, supra*, 81 N.W.2d at 891.

■ Therefore, this court holds that with respect to defendant architect that a relationship of trust and confidence did exist with respect to defendant architect's supervisory functions; and that defendant architect knew or should have known of the presence of calcium chloride because part of the concrete had been poured in sub-zero weather and defendant architect was charged with general supervision of the construction site. This court feels there was a duty to disclose this fact to the plaintiff, and thus under *Hinkle* silence con-

stitutes fraudulent concealment. Accordingly, plaintiff's complaint alleges an exception to the statute of limitation under the doctrine of fraudulent concealment. Therefore, genuine issues of material fact do exist and defendant architect's motion for summary judgment is denied.

## II. Fraud

Defendant contractor's situation presents a slightly different question as plaintiff has alleged that defendant contractor falsely and fraudulently represented that the educational addition was constructed in a good and workmanlike manner and in accordance with architectual specifications.

Defendant contractor's agreement with plaintiff provided that the contractor would furnish all materials and perform all of the work shown on certain drawings and specifications prepared by the architect entitled "Educational Addition, Canton Lutheran Church, Comiss No. 227." These specifications did not call for or authorize the use of calcium chloride.

■ "To be sufficient, a pleading setting up fraud as a basis for recovery of damages must clearly and distinctly allege all of the essential elements of actionable fraud." *Voeller v. Geisler*, 77 S.D. 96, 86 N.W.2d 395 (1957). *See also* SDCL 15–6–9(b) and F.R. C.P. 9(b).

> Essential elements to establish actionable fraud are generally speaking, that a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage. *Northwest Realty Co. v. Colling*, 82 S.D. 421, 147 N.W.2d 675 (1967).

There can be no fraud if there is no duty. *Northwest Realty Co. v. Colling, supra.*

The South Dakota Supreme Court has repeatedly said that "fraud is never presumed or lightly inferred and the burden of establishing fraud rests on the party who seeks to rely on it for affirmative relief. . . ." *Northwest Realty Co. v. Colling, supra* 147 N.W.2d at 683; *City of Vermillion v. Hugener*, 75 S.D. 106, 59 N.W.2d 732 (1953); *Breneman v. Aune*, 73 S.D. 478, 44 N.W.2d 219 (1950).

■ Based on this analysis and a close examination of the pleadings in this case, the court holds that fraud has been alleged with sufficient particularity and that the pleadings clearly and distinctly allege all of the essential elements of fraud.

Therefore, since the statute of limitations runs against an action based on fraud in the construction of a building from the date of the discovery of the fraud, 13 Am.Jur.2d *Building & Construction Contracts* section 114, 150 A.L.R. 778, *see also* SDCL 15–2–3 and 15–2–13, defendant contractor's motion for summary judgment is denied. The issue of fraud presents a genuine issue of material fact and accordingly it is left to the trier of fact. *Commercial Equipment Corp. v. Johnson*, 87 S.D. 411, 209 N.W.2d 548 (1973).

## III. Equitable Estoppel

A doctrine closely related to fraud and fraudulent concealment is equitable estoppel.

> To constitute an equitable estoppel false representation or concealment of material facts must exist; the party to whom it was made must have been without knowledge of the real facts; that representations or concealment must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied thereon to his prejudice or injury. *Northwest Realty Co. v. Colling, supra* 147 N.W.2d at 682; *Cromwell v. Hosbrook*, 81 S.D. 324, 134 N.W.2d 777 (1965).

The doctrine is based on the ground of public policy, fair dealing, good faith, and justice and its purpose is to forbid one to speak against his own acts, representations, or commitments to the injury of one to whom they were directed and who reasonably relied thereon. *Smith v. Coutant*, 6 N.W.2d 421 (Iowa 1942); 28 Am.Jur.2d *Es-*

880

*toppel and Waiver* section 28. The proper function of equitable estoppel is the prevention of fraud. *Union Mutual Life Ins. Co. v. Mowry*, 96 U.S. 544, 24 L.Ed. 674 (1877).

The South Dakota Supreme Court recognizes that a party may by his conduct, estop himself from asserting a statute of limitation defense. *Chipperfield v. Woessner*, 84 S.D. 13, 166 N.W.2d 727 (1969); *Braunstein v. North River Ins. Co.*, 62 S.D. 561, 255 N.W. 463 (1934); *Farmers' Shipping Association of Sinai v. Nordgren*, 56 S.D. 152, 227 N.W. 576 (1929); *Kroegen v. Farmers Mutual Ins. Co.*, 52 S.D. 433, 218 N.W. 17 (1928).

Accordingly, it is the court's belief that defendant architect's and defendant contractor's actions in this matter fall within that range of conduct necessary to invoke the doctrine of equitable estoppel and are prohibited from relying on or asserting the statute of limitations as a defense.

Therefore, for all the above mentioned reasons defendant architect's and defendant contractor's motions for summary judgment are denied. Plaintiff's motion to strike those portions of defendants' answers relating to the bar of the statute of limitations is also denied at this time because of the existence of genuine issues of material facts particularly relating to the question of fraud and fraudulent concealment. Based on the court's holding on the fraudulent concealment, fraud and equitable estoppel issues and recognizing the doctrine of judicial restraint discussed above, the court finds it unnecessary to reach the constitutional and other issues involved.