[S. F. No. 17062.   In Bank.   Oct. 9, 1945.]

O. B. RAND, Petitioner, v. WILLIAM C. BOSSEN, as Treasurer, etc., et al., Respondents; JAMES IRVINE, Intervener and Respondent.

Hewitt & McBride and Loyd E. Hewitt for Petitioner. ·

Rich & Weis, W. P. Rich and Richard H. Fuidge for Respondents.

W. Coburn Cook for Intervener and Respondent.

CARTER, J.—Petitioner is the holder of a bond of respondent Reclamation District No. 784, which was one of an issue of 1921 secured by assessments levied upon lands in the district. A call for payment of assessments to meet bonds was made in 1937. In response thereto Farm Land Investment Company, an owner of land in the district against which assessments were a lien, paid them with matured bonds of the district and the lien was cancelled by respondent Bossen, County Treasurer, bond fund custodian of the district. Respondent Bosse acquired the land involved from the company. Petitioner prays for a writ of mandate compelling the sale of the above-mentioned land upon the theory that the assessments are delinquent because there was no lawful authority to accept the bonds in payment of them. Intervener holds bonds of the same issue.

At the time of the issuance of the bonds, section 3480 of the Political Code, the statute under which the bonds were issued, contemplated payment of assessments in cash. However, purchasers at a sale after delinquency or by the treasurer after deed to him, were authorized to pay the purchase price in bonds. (Stats. 1917, p. 1181.) In 1923 a paragraph was added to section 3480 reading:

"Any land owner of the district who shall desire at any time to lessen or remove the lien upon his land of any assessment on which bonds have been or hereafter may be issued may deliver to the county treasurer for cancellation any bonds payable out of said assessment, and the treasurer shall credit against the assessment on his land the principal and accrued interest of said bonds." (Stats. 1923, p. 598.) It was pursuant to that paragraph that Farm Land Investment Company paid the 1937 assessment call with bonds.

It has been held that to apply that paragraph to bonds issued before its enactment would be a violation of the impairment of contracts clause of the Constitution (*Hershey* v. *Cole,* 130 Cal.App. 683 [20 P.2d 972]; see 85 A.L.R. 242; 97 *id.* 911) on the principle that the terms of the statute under which the bonds are issued become a part of the contract with the bondholder which cannot be impaired by subsequent amendment. (See 85 A.L.R. 242; 97 *id.* 911.) Assuming the soundness of that proposition, and its applicability here, inasmuch as the bonds were issued prior to 1923, when the paragraph

was added to section 3480, we come to the statute adopted in 1941, reading:

"No action or proceeding to contest the validity of any credit on or payment of all or any portion of an assessment levied by a reclamation district which has heretofore been made pursuant to the provisions contained in Section 3480 of this code at the date of such credit or payment, may be commenced unless commenced within six months from the effective date of this section or the date of such credit or payment, whichever is the later date." (Pol. Code, § 3480g, added by Stats. 1941, ch. 145.) It is urged that to hold that the instant proceeding is barred thereunder would be an impairment of the bondholder's contract; that the period of time is unreasonably and arbitrarily short; and that an unreasonable burden is placed on the bondholders if they must keep, at their peril, constant watch upon the proceedings for collection of assessments although there is no default in the principal or interest on their bonds.

We find no impairment of the bondholder's contract by section 3480g. Assuming his contract embraces the right to have the assessments paid in cash and that *all* remedies for the enforcement of that contract cannot be taken away, section 3480g does not purport to achieve that result. It merely fixes a *time limit* during which he may assert the right. True, it may be that he must be more vigilant in keeping a watch on whether the district officials are performing the terms of the contract such as levying the assessments to pay the bonds and collecting them in the proper medium, but it is his contract and he has an obligation to ascertain whether or not it is being performed. It has heretofore been held that an action on the bond must be commenced within four years from its maturity date. (*Irvine* v. *Bossen,* 25 Cal.2d 652 [155 P.2d 9].) Holders of nonmatured bonds upon which the interest has been paid may not have the same reason to suspect that collections are not being made in cash that would tend to motivate holders of matured bonds or those with interest in default. But they presumably are familiar with the statute—the terms of their contract and must be guardians of their own interests. In *Coombes* v. *Getz,* 217 Cal. 320 [18 P.2d 939], this court was considering the statute of limitation on a constitutionally given right of action against the officers of a corporation for embezzlement. It was contended that the statute of limitation was invalid because it impaired the

constitutional right when it was applied where plaintiff did not know of the embezzlement. To this the court replied that:

"This restriction upon legislative action does not, however, extend to reasonable statutory limitations within which this constitutional right may be enforced." ▇ Likewise, in the instant case the Legislature is authorized to place reasonable limitations upon a constitutionally protected right. ▇ It is not new that a mandamus proceeding may be barred by a statute of limitation where action is sought to compel officials to perform duties in connection with the collection of taxes or assessments to pay bonds. (See *Barnes* v. *Glide*, 117 Cal. 1 [48 P. 804, 59 Am.St.Rep. 153].) ▇ We cannot agree that under section 3480g a bondholder's action might be barred before it accrues. That assumes that he could not bring an action to compel the collection of assessments in cash rather than bonds before there was a default in payment of his bonds. It would probably rarely happen that the acceptance of bonds instead of cash would not be immediately followed by a default in either principal or interest. But in any event the section may be interpreted to *fix* by implication the time when an action accrues to contest the validity of a credit on or payment of an assessment as well as the time within which the action must be commenced. So viewed the issue is solely one of the reasonableness of the time limit.

▇ The general rule with regard to retroactive operation of statutes of limitation is stated in *Rosefield Packing Co.* v. *Superior Court*, 4 Cal.2d 120, 122 [47 P.2d 716]:

"In accordance with this principle it has been specifically held that the legislature may shorten or extend the period of the statute of limitations, or similar time statutes relating to procedure, and that the changed period may be made applicable to pending proceedings. . . . There is, of course, one important qualification to the rule: where the change in remedy, as, for example, the shortening of a time limit provision, is made retroactive, there must be a reasonable time permitted for the party affected to avail himself of his remedy before the statute takes effect. If the statute operates immediately to cut off the existing remedy, or within so short a time as to give the party no reasonable opportunity to exercise his remedy, then the retroactive application of it is unconstitutional as to such party." (See, also, 5 Cal.Jur. 755, 788; 34 Am.Jur., Limitations of Actions, §§ 18-26; 49 A.L.R. 1263; 120 A.L.R.

758.) In *Tuttle* v. *Block,* 104 Cal. 443 [38 P. 109], the court was concerned with a statute requiring that a deed be made by the tax collector within a year after the passage of the act or the purchaser at the tax sale would be deemed to have abandoned his rights. An action in mandamus by a purchaser at a tax sale ten years before the act was passed, to compel the execution of a deed, was held barred because not commenced within the year after the statute became effective. The court stated at page 448:

"The amendment in question is clearly a prospective statute of limitation of the time within which the tax deed must have been made, and consequently a like limitation of the time within which an action must have been commenced to enforce the making of such deed; and, as such, does not impair nor purport to impair the obligation to make the deed, but merely prescribes a reasonable period of time, *after the passage thereof,* within which an action for a breach of such obligation must have been commenced. . . .

"This argument, though often made heretofore, has been answered and almost uniformly overruled by the highest authorities. It is well settled that a reasonable limitation of the time within which a matured contractual obligation may be enforced by suit does not impair the obligation of the contract in the sense of the constitutional prohibition cited; and it has been often held that a limitation to one year, and even to six months, is not unreasonable, and does not impair the obligation of the contract nor deprive the obligee of an adequate remedy." ▪ What constitutes a reasonable time is primarily a question for the Legislature and a court will not overrule its decision except where palpable error has been committed. (*Terry* v. *Anderson,* 95 U.S. 628 [24 L.Ed. 365]; *Wilson* v. *Iseminger,* 185 U.S. 55 [22 S.Ct. 573, 46 L.Ed. 804]; *Mills* v. *Scott,* 99 U.S. 25 [25 L.Ed. 294].) ▪ ▪Tested by that rule we cannot say the period of six months here specified is unreasonable. Consideration must be given to the circumstances that the collection of the assessments as required by the statute is a part of the bondholder's contract of which he is presumed to be aware. He also should know that the establishment of statutes of limitation are always a legislative prerogative. The mode of payment or crediting assessments is merely one of the things required to be done under his contract. There is always the power to levy supplemental assessments. (*Irvine* v. *Reclamation Dist. No. 108,* 24 Cal.2d 468

[150 P.2d 428].) Any delay in questioning the validity of an assessment payment or credit tends to disturb the orderly procedure of assessment collection, the performance of the duties by the officials, the orderly payment of bonds and the stability of the titles of landowners. ▮ The statute authorizing the payment of assessments with bonds was adopted in 1923 but it was not until in 1933 that *Hershey* v. *Cole, supra,* laid down the rule that it did not apply to bonds issued prior to that time. There probably have been many instances throughout the state in which the custodian of bond funds has accepted bonds in payment of assessments although the bonds were issued prior to the 1923 amendment. These factors not only justified the length of the period of time fixed by the Legislature but also the adoption of a limitation period.

▮ True the statute is part of the bondholder's contract but not every alteration in his remedies or rights is an unconstitutional impairment of his contract. Thus, in *Keefe* v. *Clark,* 322 U.S. 393 [64 S.Ct. 1072, 88 L.Ed. 1346], the statute under which bonds secured by assessments were issued provided for supplemental assessments if the original assessment proved inadequate to pay the bonds. A subsequent statute declared all land which was sold for taxes would be relieved from all assessment charges, thus making it not subject to a supplemental assessment. The court held the statute valid, stressing the fact that the contract obligation to levy a supplemental assessment was not on the face of the bond itself. Likewise, in the instant case there is nothing on the face of the bonds requiring that assessments must be paid in cash, specifying the remedy of a bondholder or the time within which he may pursue it. The court went on to state at page 397:

"We do not find in the provision of the drain statute relied upon by appellants a clear and unequivocal purpose of Michigan to permit drain districts to bargain away the State's power to sell tax-delinquent lands free of encumbrances. Long before the date when appellants' bonds were issued, the Michigan Supreme Court had held that, 'The general rule is that a sale and a conveyance (by the State) in due form for taxes extinguishes all prior liens, whether for taxes or otherwise. This rule is one of necessity, growing out of the imperative nature of the demand of the government for its revenues.' . . . The provision of the drain statute upon which appellants rest their case does not expressly purport to alter this 'rule of necessity'. On its face it deals only with the levy

of an additional assessment in the event that drain bonds are not paid in full at maturity, and does not assume to deal with the manner of selling tax-delinquent properties in drain districts or the kind of title that can be conveyed at such sales. 'The language falls far short of subjecting lots which have been sold to pay tax or assessment liens to an additional assessment for the deficit. Such a construction would defeat the remedy of tax sales as a means of realizing the assessment lien.' '' Also in the case at bar, as has heretofore been pointed out, the remedies of the bondholder have always been subject to statutes of limitation and there is nothing in the statute under which the bonds were issued that compels the conclusion that the Legislature bargained away its power to alter the limitation period.

Reliance is placed upon the series of cases including *Mc-Gahey* v. *Virginia,* 135 U.S. 662 [10 S.Ct. 972, 34 L.Ed. 304], and *In re Brown,* 135 U.S. 662, 701 [10 S.Ct. 972, 34 L.Ed. 304]. In those cases the State of Virginia had issued interest coupons which were made receivable in the payment of taxes and other debts due the state. By various methods the state Legislature sought to impair that right. In the Brown case the statute placed a limit of a year in which to test the validity of a coupon. Otherwise, it could not be used in the payment of taxes. The court held the period unreasonable but conceded that each case must rest upon its own circumstances. It pointed out factors that do not exist in the instant case. It said at page 707:

". . . But if they were not paid at maturity the alternative right was given to the holder of them to use them in the payment of taxes, debts, dues and demands due to the State. The very nature of the case shows that such an application of the coupons could not be made immediately or in any very short period of time. If all the bonds were of the denomination of one thousand dollars each, *it would require twenty thousand of them to make up the funded debt of twenty millions of dollars.* These twenty thousand bonds would be likely to be scattered and dispersed through many States and countries, and it would be impracticable for the holders of them to use the coupons which the State should fail to pay in cash, in the alternative manner stipulated for in the contract, *unless they had a* reasonable time to dispose of them to taxpayers." (Emphasis added.) And at page 708:

"The only way in which they (non-resident bondholders)

could, within the year prescribed, utilize their coupons, the accumulation perhaps of years, would be to sell and dispose of them to the taxpayers. How this could be done, especially in view of the onerous laws which were passed with regard to the sale of coupons in the State, it is difficult to see. Under all the circumstances of the case, and the peculiar condition of the securities in question, we are compelled to say that in our opinion the law is an unreasonable law and that it does materially impair the obligation of the contract.'' Moreover, the court pointed out that (p. 708) :

''No limitation of time was fixed by the act within which the coupons should be presented or tendered in payment of taxes or other demands. The presumption would naturally be that they could be used within an indefinite period, like bank bills.'' In the instant case the statute of limitation was a bar to an action on the bonds. (*Irvine* v. *Bossen, supra.*) Other cases are cited but suffice it to say each case depends upon the particular factors involved.

Intervener advances other arguments why the petition should not be granted, such as that petitioner's bonds are barred by the statute of limitation under the rule announced in *Irvine* v. *Bossen, supra,* and pendency of another action, but inasmuch as we have determined that this proceeding is barred by section 3480g of the Political Code it is unnecessary to discuss them.

The alternative writ is discharged and the petition for a peremptory writ is denied.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Schauer, J., concurred.