MUZAR v METRO TOWN HOUSES, INC.

Docket Nos. 77-1434, 77-1435. Submitted January 16, 1978, at Detroit.
    —Decided April 4, 1978.

Charlotte Muzar, Carrie Ledbetter and Agatha Malinowski brought an action for damages for breach of warranty against Metro Town Houses, Inc., and State Farm Fire & Casualty Company when the building in which all three of the plaintiffs' townhouses were located collapsed. Metro Town Houses, Inc., was found to be defunct, and State Farm settled the suit with the plaintiffs. State Farm then brought a third-party action for indemnity against Francisco Moschelli and Dembs Building Company. Dembs in turn filed a third-party complaint for indemnity against Lehner Associates, Inc., the architects who designed the building. Concurrent with these proceedings the original plaintiffs filed an action for damages directly against Dembs Building Company, which again brought a third-party complaint for indemnity against Lehner. Lehner moved for accelerated judgment in each case and the Macomb Circuit Court, George R. Deneweth, J., granted the motions on the basis that the statute of limitations which applies to suits against licensed architects and professional engineers arising from work done in connection with improvements to real property had run. Dembs Building Company appeals, and the cases were consolidated on appeal. *Held:*

The statute of limitations applicable to suits against licensed architects and professional engineers arising from work done in connection with improvements to real property unconstitutionally violates equal protection of the laws because it distinguishes between the architects and engineers on the one hand and other members of the construction industry on the other, a distinction which is arbitrary and without reasonable relation to the object of the statute.

Reversed and remanded for reinstitution of the third-party complaints.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 51 Am Jur 2d, Limitation of Actions § 31 *et seq.*
[3] 16 Am Jur 2d, Constitutional Law §§ 517, 518, 526–529.
[4] 1 Am Jur 2d, Actions §§ 87, 88.

1. LIMITATION OF ACTIONS—ARCHITECTS AND ENGINEERS—CONSTITUTIONAL LAW—EQUAL PROTECTION—STATUTES.

    A statute of limitations applicable to suits against licensed architects and engineers arising from work done in connection with improvements to real property, when challenged on the basis of equal protection, should be considered using the "substantial relation to the object of the legislation" test (MCLA 600.5839[1]; MSA 27A.5839[1]).

2. LIMITATION OF ACTIONS—ARCHITECTS AND ENGINEERS—CONSTITUTIONAL LAW—EQUAL PROTECTION—STATUTES.

    A statute of limitations applicable to suits against licensed architects and professional engineers arising from work done in connection with improvements to real property unconstitutionally violates equal protection of the law because it distinguishes between licensed architects and professional engineers on the one hand and other members of the construction industry on the other without a reasonable relation to the object of the act (MCLA 600.5839[1]; MSA 27A.5839[1]).

3. CONSTITUTIONAL LAW—EQUAL PROTECTION—INDEMNITY.

    The general principle of equal protection is that all persons shall be treated alike under like circumstances and conditions, both in privileges conferred and in the liabilities imposed; therefore, a statute violates equal protection where it arbitrarily and without reasonable relation to the object of the legislation allows a defendant to be held liable for injury without recourse of indemnity against a similarly situated person who may in fact have caused the injury.

4. ACTION—CAUSE OF ACTION—LEGISLATURE—ABROGATION OF CAUSE OF ACTION.

    The Legislature may abrogate a cause of action which has not vested.

*Eli Friedman,* for Dembs Building Company.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P. C.* (by WILLIAM D. BOOTH and MICHAEL T. LYNCH), for Lehner Associates, Inc.

Before: T. M. BURNS, P. J., and M. F. CAVANAGH and D. C. RILEY, JJ.

D. C. RILEY, J. The present appeal involves a challenge to the constitutionality of MCLA 600.5839(1); MSA 27A.5839(1),[1] the statute of limitations applicable to suits against licensed architects and engineers arising from work done in connection with improvements to real property. A short recitation of the factual and procedural history of the cases is necessary prior to our discussion of the issue.

In 1964, Metro Town Houses, Inc. contracted with Dembs Building Company for construction of a townhouse complex in Mount Clemens, Michigan. Dembs in turn contracted the design of the drainage system for the townhouse buildings to Lehner Associates, Inc., a professional engineering firm.

In 1965, three of the townhouses were sold by Metro to plaintiffs Charlotte Muzar, Carrie Ledbetter, and Agatha Malinowski. All three of the townhouses were contained within the same building. State Farm Fire and Casualty Co. insured plaintiffs against damage, including collapse, to the common building.

On January 3, 1973, the building housing the plaintiffs' townhouses collapsed, allegedly due to defects in the construction of the drainage system.

---

[1] The statute reads:

"No person may maintain any action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of such injury against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of such improvement more than 6 years after the time of occupancy of the completed improvement, use or acceptance of such improvement. This limitation shall not apply to actions against any person in actual possession and control as owner, tenant or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought."

In July, 1973, plaintiffs sued Metro and State Farm, jointly and severally, for breach of warranty. After Metro was discovered to be defunct, State Farm settled the plaintiffs' suit for $40,000.

In December, 1975, State Farm brought a third-party complaint against Dembs, claiming that it was subrogated to the original plaintiffs' right to seek recovery of the $40,000 from the construction company. In turn, Dembs filed a third-party action for indemnity against Lehner Associates, alleging that the collapse was caused by defective design of the drainage system.

Concurrent with these proceedings, the original plaintiffs instituted a separate lawsuit directly against Dembs, alleging a breach of warranty. Dembs again filed a third-party complaint for indemnity against Lehner.

On August 11, 1976, Lehner filed motions for accelerated judgment[2] against Dembs in both suits, arguing that the actions were barred by MCLA 600.5839(1); MSA 27A.5839(1), since the building collapsed more than six years after completion of the work done by Lehner. In answer to the motion Dembs contended that the statute was unconstitutional as a violation of equal protection. On December 13, 1976, the trial court issued an opinion upholding the constitutionality of the statute and granting accelerated judgment to Lehner in both lawsuits. Dembs appealed the accelerated judgments to this Court, which has consolidated the matters due to the identity of the issues.

Appellant Dembs contends that the statute violates equal protection since it sets up a limited class (licensed architects and professional engineers) and exempts them from tort liability after a set time period without extending the same protec-

[2] GCR 1963, 116.1(5).

tions to other entities (contractors, materialmen, etc.) engaged in the construction industry and subject to related liabilities. Dembs argues that the statute arbitrarily discriminates between persons in the construction industry, claiming that none of the various justifications expressed in support of the legislation apply only to architects and engineers.

Lehner responds that the Legislature may validly limit the scope of the statute to a particular occupational class provided that there is a rational basis for the classification scheme. Lehner finds such a rational basis for this statute in the allegedly unique position of architects and engineers facing potential liability for work in connection with real property.

From the proceeding discussion it is evident that before the equal protection challenge can be reviewed and decided we must specify the standard by which we will judge the constitutionality of the statute. Under classic equal protection analysis the applicable standard depended on whether the legislation affected a "suspect" class or a fundamental right. If so, the reviewing court would apply a "strict scrutiny" test, which would require the state to show a compelling interest justifying the legislation. *Manistee Bank & Trust Co v McGowan,* 394 Mich 655; 232 NW2d 636 (1975). If the legislation did not affect a suspect class or fundamental right, the burden would be on the person challenging the statute to show that there was no reasonable or rational basis for the classifications at issue. *Manistee Bank, supra.* In the majority of cases it appeared that the choice of the test predetermined the result, since few pieces of discrimina-

tory legislation could withstand strict scrutiny, but some rational basis for a classification could be found.[3]

In more recent cases many courts, apparently dissatisfied with the rigidity of the two-test approach, have adopted a third test as a middle-ground standard for equal protection challenges. In *Manistee Bank, supra,* the Michigan Supreme Court termed this test as the "fair-and-substantial-relation-to-the-object-of-the-legislation" standard. *Manistee Bank, supra* at 670.[4] The Court stated:

"A commentator writes that the California Supreme Court 'applied a somewhat redefined standard of equal protection—a standard requiring a "realistic", rather than merely a "legitimate", state purpose which is *substantially,* rather than merely rationally, supported by the classification system set up by the legislature. * * * The Court in *Brown [Brown v Merlo,* 8 Cal 3d 855; 106 Cal Rptr 388; 506 P2d 212 (1973)] refused to attribute to the legislature a "theoretically 'conceivable', but totally unrealistic, state purpose that might support this classification scheme" * * * '. (Emphasis in original.) In short, the California Supreme Court approached its reviewing function in a manner Professor Gunther identifies as 'means scrutiny' or 'equal protection bite without "strict scrutiny"'.

"Whatever label is attached to the analysis * * * 'the governing rule is one of reason: The Equal Protection Clause, like the Due Process Clause, is a guaranty that controls the reasonableness of governmental action'. The classification must be a reasonable one, and it must bear a reasonable relation to the object of the legislation." (Footnotes omitted.) *Manistee Bank, supra* at 670–671.

---

[3] *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 669; 232 NW2d 636 (1975). *See also* Note, *Developments in the Law: Equal Protection,* 82 Harv L Rev 1065 (1969), and Gunther, *Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 Harv L Rev 1 (1972).

[4] *See Reed v Reed,* 404 US 71; 92 S Ct 251; 30 L Ed 2d 225 (1971).

The *Manistee Bank* Court went on to state that
the "reasonable relation to the object of the legis-
lation" test should be applied where the statute
creates an exception to a general rule and that
exception is no longer experimental. 394 Mich at
671–672. The Court then applied the test to hold
Michigan's guest-passenger statute[5] unconstitu-
tional.

We believe that the *Manistee Bank* test should
be applied in the case at bar. No argument has
been, or reasonably can be, made that the statute
affects a suspect class or fundamental right,
thereby eliminating the "strict scrutiny" alterna-
tive. We believe further that the statute does not
fit into the category of experimental legislation
that would justify application of the lower stan-
dard of review provided by the "rational basis"
test.[6] Hence, we conclude that the proper test was
set out in *Manistee Bank, supra.*

As we will discuss in the remainder of this
opinion, numerous cases from other jurisdictions
have dealt with equal protection challenges to
statutes similar to Michigan's. In the course of
those cases, the gamut of justifications expressed
in support of the statutes has been analyzed and
reanalyzed.

"Where a classification scheme creates a discrete
exception to a general rule and has been enforced for a
sufficiently long period of time that all the rationales
likely to be advanced in its support have been devel-

---

[5] MCLA 257.401; MSA 9.2101.

[6] For an example of a situation of where a legislative experiment is
afforded a greater amount of judicial deference through use of the
rational basis test, see the treatment of challenges to Michigan's no-
fault automobile insurance law in *Shavers v Attorney General,* 65
Mich App 355, 366–368; 237 NW2d 325 (1975), *lv granted* 396 Mich
869 (1976), and *Schigur v Secretary of State,* 73 Mich App 239, 248;
251 NW2d 567 (1977).

oped, a court should fully examine those rationales and determine whether they are sound.

"It is understandable that a court reviewing what may be 'experimental' legislation would say, as did this Court in *Naudzius, [Naudzius v Lahr,* 253 Mich 216; 234 NW 581 (1931)] '[p]erhaps the legislature also had other reasons for the law'. Where, however, it can no longer be claimed that the legislation is experimental, where all possible rationales have been developed, a court should not dismiss a constitutional challenge on that hypothesis." *Manistee Bank, supra* at 672.

Although we note that no previous cases have challenged Michigan's law, we find that the cases construing similar statutes have removed this area of legislation from the experimental class, and thus call for application of the "reasonable relation to the object" standard.

Applying this standard, we hold that MCLA 600.5839(1); MSA 27A.5839(1) unconstitutionally violates equal protection in that it distinguishes between licensed architects and professional engineers on the one hand and other members of the construction industry on the other without a reasonable relation to the objects of the act. We find support for this conclusion in the review given by our sister states to their similar statutes.

In response to what had become a rising trend of lawsuits directed against members of the construction business resulting from allegedly defective or negligent work,[7] a number of states passed laws seeking to limit the liability of these parties. See Comment, *Limitation of Action Statutes for Architects and Builders—Blueprints for Non-action,* 18 Catholic U L Rev 361 (1969). On review some of

---

[7] This trend was prompted by two factors: (1) abolition of the privity of contract requirement, and (2) rejection of the doctrine that liability ended when the work was accepted.

these statutes have been struck down on constitutional grounds.

In *Skinner v Anderson,* 38 Ill 2d 455; 231 NE2d 588 (1967), the Illinois Supreme Court found their statute to be unconstitutional because it singled out architects and contractors for protection not granted to similarly situated parties:

"The arbitrary quality of the statute clearly appears when we consider that architects and contractors are not the only persons whose negligence in the construction of a building or other improvement may cause damage to property or injury to persons. If, for example, four years after a building is completed a cornice should fall because the adhesive used was defective, the manufacturer of the adhesive is granted no immunity. And so it is with all others who furnish materials used in constructing the improvement. But if the cornice fell because of defective design or construction for which an architect or contractor was responsible, immunity is granted. It can not be said that the one event is more likely than the other to occur within four years after construction is completed." 38 Ill 2d at 460; 231 NE2d at 591.

The *Skinner* Court held that in order for a legislative classification to be valid, it had to be "reasonably related to the legislative purpose". *Skinner, supra* at 460.

Although the *Skinner* decision was founded on a specific section of the Illinois constitution,[8] which forbids the state Legislature from granting any special or exclusive privileges, the analysis undertaken by the *Skinner* Court applies by analogy to a more general equal protection argument. This is especially so since the *Skinner* Court employed the "reasonably related to the purpose" test for challenges under the state constitutional provision.

[8] S.H.A. Const, art 4, § 22.

The Hawaii Supreme Court reached a similar result in *Fujioka v Kam,* 55 Hawaii 7; 514 P2d 568 (1973). The Hawaii statute limited actions against "any registered and/or duly licensed person" who furnished services in the design, planning or construction of improvements to real property to those brought within ten years of completion of the work.[9] In *Fujioka,* a plaintiff injured by the collapse of a supermarket roof sued the owners of the store, who in turn brought a third-party complaint against the engineer and general contractor who had constructed the roof. The third-party defendants successfully moved for summary judgment on the basis of the statute. The owners appealed, alleging a violation of equal protection.

The *Fujioka* Court, citing *Skinner v Anderson, supra,* held the statute unconstitutional:

> "It is clear that the classification does not rest upon some reasonable consideration of differences (between the classes under the same circumstances), which have a fair and substantial relation to the object of the legislation. Nor is the classification founded upon a reasonable distinction or difference necessitated by state policy. A statute making such an unsupportable classification fails to meet the requirements of the equal protection guaranty.
>
> \* \* \*
>
> "As we have said, the general requirement of the principle of 'the equal protection clause is that all persons shall be treated alike under like circumstances and conditions, both in privileges conferred and in the liabilities imposed.' *State v Johnston,* 51 Haw 195, 202, 456 P.2d 805, 809 (1969).
>
> "Here, it is clear that the statute calls for arbitrary and capricious discrimination and must therefore be declared an invidious discrimination violative of the

---

[9] HRS § 657-8.

equal protection guaranty." 55 Hawaii at 12, 13; 514 P2d at 571, 572.

In *Kallas Millwork Corp v Square D Co,* 66 Wis 2d 382; 225 NW2d 454 (1975), the Supreme Court of Wisconsin, employing a "rational and reasonable justification for the classification" test for equal protection, struck down their statute limiting actions against "any person performing or furnishing the design, planning, supervision of construction or construction" of improvements to real property.[10] Relying on *Skinner, supra,* and *Fujioka, supra,* the Court in *Kallas Millwork* stated:

"We find the rationale of *Skinner* and *Fujioka* persuasive and applicable to the interpretation of sec. 893.155, Stats., and the facts of this case. We adopt their position and conclude that the legislative classification that gives special protection to the protected group is unreasonable. While there are public policy reasons that might justify a limitations period that takes into consideration those who are engaged in the construction business, there appears no reason why only a very restricted class of those thus occupied is protected by the statute.

"As pointed out by Mr. Justice Schaeffer, it is ludicrous to permit a recovery against a manufacturer of a negligently formulated mortar or adhesive, but to deny a recovery against an architect who negligently designed a cornice or facade so that its fall was inevitable." 66 Wis 2d at 392–393; 225 NW2d at 459.

While *Skinner, Fujioka,* and *Kallas Millwork* are certainly relevant to the present matter, they are not the only opinions on this subject. Other jurisdictions have upheld similar statutes against equal protection challenges. Not wishing to discuss

---

[10] WSA 893.155.

at length our disagreements with those opinions, we quote with approval the language of Justice Heffernan in *Kallas Millwork:*

"The defendant also relies on *Rosenberg v Town of North Bergen* (1972), 61 N.J. 190, 293 A.2d 662, and *Carter v Hartenstein* (1970), 248 Ark. 1172, 455 S.W.2d 918. Those cases together with *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.* (1972), 81 Wash.2d 528, 503 P.2d 108, do indeed support the defendant's contention that sec. 893.155, Stats., is constitutional. None of those three cases is persuasive. Each of them recites the truism that the legislature can make reasonable classifications of persons or things and accord different treatment to different classes. None of these cases, however, justify the special immunity accorded to the protected class but denied to others similarly situated. The cases relied upon, which fail to find statutes similar to sec. 893.155 unconstitutional, do not come to grips with the real problem presented—what factors distinguish the favored class so that it requires or deserves an immunity not accorded others who appear to be similarly situated.

"The cases relied upon by the defendant to sustain the constitutionality of sec. 893.155, Stats., are not persuasive, and we reject them." 66 Wis 2d at 392–393; 225 NW2d at 460.

Applying the reasoning of the cited cases to Michigan's statute, we reach the inescapable conclusion that the classification limited to "licensed architects and professional engineers" is arbitrary and without reasonable relation to the object of the legislation. Appellee has argued a number of justifications for the time limitations of the statute, including prevention of stale claims, the burdens of keeping records concerning work done many years in the past, the probabilities that defects in construction will not appear for long periods of time, and the lack of knowledge pos-

sessed by nonoccupiers of property as to altera-
tions and/or lack of maintenance that may have
contributed to or even caused the damages. Even if
we agree that the statute is intended to remedy
these potential problems, we remain unconvinced
that any of these rationales support the classifica-
tion made in the legislation. The difficulties faced
by architects and engineers suddenly subject to
liability for work done a significant time in the
past are equally present when contractors, materi-
almen, etc. face similar liability. We concur with
Justice Schaeffer in *Skinner, supra,* by noting the
arbitrary nature of legislation which allows a
defendant to be held liable without recourse of
indemnity against a similarly situated person who
may in fact have caused the injury.

In addition, Michigan's statute is even more
discriminatory than those struck down in *Skinner,
Fujioka,* and *Kallas Millwork.* All of the statutes
of these states included contractors, such as appel-
lant Dembs, within the protection of their statute.
While we might find some justification for the
exclusion of persons in possession and control if we
were squarely faced with that situation, we can
conceive of no reasonable relationship to the object
of this statute which allows for a distinction be-
tween contractors and materialmen on one hand
and architects and engineers on the other. We
hold that the grant of summary judgment in favor
of appellee Lehner denied appellant Dembs equal
protection of the law.

Having found the statute unconstitutional as a
violation of equal protection, we are not required
to reach the remaining issues raised by Dembs.
However, one issue bears discussion in the event
the Legislature should attempt statutory revision.

Dembs argues that the statute violates due proc-
ess in that it allows the limitation period to run
before the cause of action accrues (*i.e.,* before the

damages occur). The statute, it is thus argued, eliminates a claim before it can be factually asserted.

It is essential to note, however, that the Legislature may abrogate a cause of action which has not vested. *Grubaugh v City of St Johns,* 384 Mich 165; 180 NW2d 778 (1970), *Snow v Freeman,* 55 Mich App 84; 222 NW2d 43 (1974). The method of accomplishing this purpose was discussed in *Dyke v Richard,* 390 Mich 739, 745–747; 213 NW2d 185 (1973):

"It is helpful to keep in mind the distinction between a statute which is intended to abrogate a common-law cause of action and a statute of limitation.

"A statute which expressly extinguishes a common-law right may be regarded as a proper exercise of legislative authority. For example, 1935 PA 127; MCLA 551.301; MSA 25.191, which abolished the common law cause of action for alienation of affections, criminal conversation, seduction and breach of contract to marry was held to be constitutional in *Bean v McFarland,* 280 Mich 19; 273 NW 332 (1937).

\* \* \*

"Since '[i]t is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought \* \* \* ', *Price [v Hopkin,* 13 Mich 318 (1865)] a statute which extinguishes the right to bring suit cannot be enforced as a law of limitation."

If the Legislature chooses to re-enact a statute which bars claims based upon a construction or design defect in an improvement to real property which arises after a set period of time from the date the work was completed, the title of the act should clearly set forth the intent of the Legislature to abolish this right of suit, and not term the legislation to be a statute of limitations.

Reversed and remanded for reinstitution of the third-party complaints. No costs, a public question being involved.