**William H. PHILLIPS and Cindy Phillips, Appellants (Plaintiffs),**

v.

**ABC BUILDERS, INC., a corporation, Appellee (Defendant).**

No. 5233.

Supreme Court of Wyoming.

May 21, 1980.

Micheal K. Shoumaker, Badley, Rasmussen & Shoumaker, P. C., Sheridan, signed the brief and appeared in oral argument for appellants.

Stuart S. Healy, Kennedy, Connor & Healy, Sheridan, signed the brief and appeared in oral argument on behalf of appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

This appeal directly challenges the constitutionality of a statute, enacted by the legislature in 1973, which immunizes a class of defendants from certain enumerated liabilities 10 years after substantial completion of any improvement to real property. Section 1-3-111, W.S.1977:

"(a) No action to recover damages, whether in tort, contract or otherwise, shall be brought more than ten (10) years after substantial completion of an improvement to real property, against any person performing or furnishing the design, planning, supervision, construction or supervision of construction of the improvement for:

"(i) Any deficiency in the design, planning, supervision, construction or observation of construction;

"(ii) Injury to any property arising out of any such deficiency; or

"(iii) Injury to the person or wrongful death arising out of any such deficiency.

"(b) Notwithstanding the provisions of subsection (a) of this section, if an injury to property or person or an injury causing wrongful death occurs during the ninth year after substantial completion of the improvement, an action to recover damages for the injury or wrongful death may be brought within one (1) year after the date on which the injury occurs."

The appellants, William and Cindy Phillips, in July, 1977 purchased a home located in Sheridan, the construction of which was substantially completed on or about May 22, 1969. After heavy rains, the basement and foundation walls began to collapse on or about May 25, 1978. The appellants were forced to vacate the home, although they were able to salvage the upper story and relocate it to another site. On September

19, 1979, the appellants filed a complaint in the district court seeking damages from the appellee, ABC Builders, Inc., which company substantially completed the home in 1969. The complaint alleged two causes of action. First, a breach of an implied warranty of fitness, and, second, negligence in the location, drainage and construction of the footings for the house.

The appellee moved to dismiss on the ground that the district court lacked jurisdiction because the "statute of limitations" had run. A hearing on the motion was conducted on October 24, 1979, and on October 29, 1979, the district court entered its judgment and order dismissing the complaint for the reason that the "statute of limitations" had run.

We will declare the statute in contravention of several provisions of the Wyoming Constitution.

Appellants assert as issues:

"I. The implied warranty of fitness for the foundation of the home exceeds ten years.

"II. The Wyoming Statutes of Limitation begin to run from the date that the injury is discovered.

"III. Wyoming Statute 1–3–111 is unconstitutional.

"A. There is no public policy reason to protect homebuilders from homeowners.

"1. Builders have a stronger bargain [sic] position.

"2. Only the builders can prevent the defect.

"3. The statute promotes shoddy and unscrupulous work.

"4. The builder is generally in a better economic position to bear the loss.

"B. There is no reason to protect architects and not owners, materialmen and manufacturers.

"C. Delayed lawsuits do not place architects and contractors at a disadvantage.

"D. There is no justification for withdrawing protection from the Homeowner."

We can address only constitutionality because that is the only issue which this record and narrowly drawn judgment will permit us to approach. However, we note that our decision in *Moxley v. Laramie Builders, Inc.*, Wyo.1979, 600 P.2d 733, provides important guidance in any additional proceedings which may result from our decision today. In that case we held:

"* * * A builder's implied warranty of fitness for habitation runs not only in favor of the first owner but extends also to subsequent purchasers. However, this implied warranty is limited to latent defects which are not discoverable by the subsequent purchasers by reasonable inspection and which become manifest only after the purchase." 600 P.2d at 735–736.

In *Moxley*, we went on to suggest that there are a myriad of circumstances where intervening sales of a home should not stand as an artificial barrier to suit for breach of warranty or negligence in construction in the absence of good reason therefor. In *Moxley* we did not, and in this case we will not, speculate about what factual circumstances or defenses may be called into play and which can be resolved only by trial. We iterate our ultimate holding in *Moxley*:

"* * * A home builder's implied warranty of fitness for habitation extends to subsequent purchasers for a *reasonable* length of time and is limited to latent defects which become manifest after the purchase. A builder of a home is also liable for damages which are foreseeable and which are caused by his negligence, to subsequent purchasers of such a home with whom he has no contractual relation even though his work is accepted by the first owner before the damage became manifest." (Emphasis in original.) 600 P.2d at 736.

This court's decision in *Tavares v. Horstman*, Wyo.1975, 542 P.2d 1275, will also play a significant role in any future proceedings in this case. In *Tavares*, we gave recognition to the special importance the home plays in our society and established a rule

that a home comes complete with an implied warranty that it is fit for human habitation and that it has been built in a reasonably workmanlike manner. The duration of such an implied warranty, as well as any cause of action which might arise out of negligent design and construction, was established to be one of reasonableness, a standard we repeated in *Moxley*. In setting that standard we also explicitly stated that " * * * different parts of construction may have a different expected life, such as a foundation compared to a roof." Id., 542 P.2d at 1282.

With these precedents as a prologue, we consider the statute at issue in this case. If the statute is applied literally, then any implied warranties or any defect resulting from negligent design or construction automatically expires upon passage of ten years following substantial completion—whether the defect is in some feature of the home which should reasonably be expected to last only a few years or whether it is in some feature of the home which should last considerably longer.

Statutes, like the one we are dealing with here, have come under the scrutiny of numerous appellate courts. The challenges have almost uniformly questioned the constitutionality of the statute. In each instance, the statutes vary in wording somewhat from state to state but the wording variations appear to play no significant role in making the statutes distinguishable. The statutes also vary in the length of the limitation from four to twenty years, a distinguishing factor of no importance. This is all to suggest that, although the words of the statutes vary and the lengths of times vary, all the decisions which have been reached in the various jurisdictions we shall consider have some bearing and provide us with guidance. Beyond these superficial considerations, we note as well that some of these statutes have withstood the challenge to their constitutionality and some have not.

Our decision will ultimately be predicated upon Wyoming law and the Wyoming Constitution. Throughout our consideration of the following cases, it is important that these Wyoming constitutional provisions be kept in mind:

Section 8, Art. I. "All courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay. * * * "

Section 34, Art. I. "All laws of a general nature shall have a uniform operation."

Section 27, Art. III. "The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * for limitation of civil actions; * * * granting to any corporation, association or individual * * * any special or exclusive privilege, immunity or franchise whatever * * *. In all other cases where a general law can be made applicable no special law shall be enacted."

The appellants rely principally upon § 34, Art. I, in asserting this view that the statute is unconstitutional. Indeed, it is the only provision of our constitution that they cite to us. Nonetheless, we include all the above constitutional provisions because the various states which have found their comparable statute to be unconstitutional have relied on these or similar provisions either separately or in combination. Clearly, it is § 34, Art. I, which rests at the heart of our decision, although these constitutional provisions must be read together in order to draw out the full sweep of § 34, Art. I. See *Bower v. Big Horn Canal Association*, 1957, 77 Wyo. 80, 307 P.2d 593.

Our analysis must be structured within the firmly-established rule that one who assails a statutory classification must carry the burden of showing that it does not rest upon any reasonable basis but is essentially arbitrary. Further, one who contests the constitutionality of a statute must do more than make bald assertions of what he thinks is discriminatory. *Bell v. Gray*, Wyo.1963, 377 P.2d 924, 925. The party urging the statute to be unconstitutional must demonstrate that proposition beyond a reasonable doubt. *Nehring v.*

*Russell,* Wyo.1978, 582 P.2d 67, 74 (and cases cited there). In this case, the appellants have ably and thoroughly presented the issue of the constitutionality of this statute and we consider the question to be posited here for our decision.

■ There is a wealth of authority available to guide our decision. Much of this authority was cited to us by the parties and we add to that cases and other authorities we have discovered in our own research. As a note of interest, it appears that at least 42 states have adopted such statutes.

The seminal decision in this area seems to be *Skinner v. Anderson,* 1967, 38 Ill.2d 455, 231 N.E.2d 588. Nearly all the cases which deal with the issue discuss *Skinner* whether or not the ultimate decision is to find the statute unconstitutional. The *Skinner* court found Illinois' comparable statute [1] to be unconstitutional because it ran afoul of § 22, Art. IV, Illinois Constitution (1964):

"The general assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: for —* * * Granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever.

* * * * " [2]

The Illinois court held the statute granted a special immunity to architects and contractors. The justification for the statute was alleged to be: (1) to require necessary litigation to be brought within a time when the circumstance can still be proven, investigation is possible, facts are accessible, proofs are not lost, memories are still fresh; and (2) such statutes do not deny equal protection merely because they affect one class and not another provided they affect all class members alike. Id., 231 N.E.2d at 590–591. The reasoning of the Illinois court has been so often cited as being sound and is relied upon in so many of the cases that follow, it merits inclusion in its entirety:

"If, as the defendant suggests, the objective of the statute is to require that trials of actions based upon defects in construction be held within a relatively short time after the work is completed, that objective is achieved only partially, and in a discriminatory fashion. If the damage or injury occurs at any time within four years after construction is completed, the time within which the action must be commenced is governed by other statutory limitations. In such cases the time between completion of construction and the required institution of suit may well exceed four years.

"More important is the fact that of all those whose negligence in connection with the construction of an improvement to real estate might result in damage to property or injury to person more than four years after construction is completed, the statute singles out the architect and the contractor, and grants them immunity. It is not at all inconceivable that the owner or person in control of such an improvement might be held liable for damage or injury that results from a defective condition for which the architect or contractor is in fact responsible. Not only is the owner or person in control given no immunity; the statute takes away his action for indemnity against the architect or contractor.

"The arbitrary quality of the statute clearly appears when we consider that architects and contractors are not the only persons whose negligence in the construction of a building or other improvement may cause damage to property or injury to persons. If, for example, four years after a building is completed a cornice should fall because the adhesive used was defective, the manufacturer of the adhesive is granted no immunity.

1. This statute granted immunity from suit four years after performance of the services.

2. We find it interesting that this section was renumbered and amended to read as follows:

"The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Section 13, Art. 4, Illinois Constitution (1971).

And so it is with all others who furnish materials used in constructing the improvement. But if the cornice fell because of defective design or construction for which an architect or contractor was responsible, immunity is granted. It can not be said that the one event is more likely than the other to occur within four years after construction is completed.

"Of course, section 22 of article IV does not prohibit legislative classification. It does, however, require that the classification be reasonably related to the legislative purpose. And where the relationship was nonexistent the statute has been held to contravene the constitutional provision. (See e. g., *Harvey v. Clyde Park District*, 32 Ill.2d 60, 203 N.E.2d 573; *Grasse v. Dealer's Transport Co.*, 412 Ill. 179, 106 N.E.2d 124; *Marallis v. City of Chicago*, 349 Ill. 422, 182 N.E. 394, 83 A.L.R. 1222.) That the statute benefits all architects and construction contractors is significant only if the benefits conferred upon them are not denied to others similarly situated. As this court held with respect to section 22 of article IV, 'That the statute operates uniformly upon all members of a class created as the beneficiaries of the act is not the sole test to be applied, but in order to avoid the constitutional inhibition last above quoted it must also appear that there is a sound basis, in reason and principle, for regarding the class of individuals as a distinct and separate class for the purpose of the particular legislation.' *Phillips v. Browne*, 270 Ill. 450, 453, 110 N.E. 601, 603."

The reasoning of *Skinner* mirrors that expressed by decisions of this court, though under different circumstances. *Nickelson v. People of State of Wyoming*, Wyo.1980, 607 P.2d 904, 910–911; *Nation v. Giant Drug Company*, Wyo.1964, 396 P.2d 431, 434–435; *May v. City of Laramie*, 1942, 58 Wyo. 240, 131 P.2d 300, 305–309; *Ludwig v. Harston*, 1948, 65 Wyo. 134, 197 P.2d 252, 257. The constitutional provision relied upon by the Illinois court is identical to § 27, Art. III, supra, of the Wyoming Constitution—a provision which we view as enlarging upon the protection generally granted to the people of this state by § 34, Art. I, supra.

Kentucky next came on line to declare its statute [3] unconstitutional. *Saylor v. Hall*, Ky.1973, 497 S.W.2d 218. The Kentucky case involved a wrongful death suit and that court relied on its constitutional provision that:

"All courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Section 14, Constitution of Kentucky (1970).

Two other constitutional provisions relating to causes of action for wrongful death also figured in the Kentucky decision. In reaching its decision, the Kentucky court reasoned:

" * * * In our view the application of these statutory expressions to the claims here asserted destroys, *pro tanto*, a common-law right of action for negligence that proximately causes personal injury or death, which existed at the times the statutes were enacted. The statutory expressions as they relate to actions based on negligence perform an abortion on the right of action, not in the first trimester, but before conception." 497 S.W.2d at 224.

The constitutional provision relied upon is virtually identical to the Wyoming Constitution, § 8, Art. I, supra.

Hawaii declared its statute unconstitutional the same year as Kentucky. *Fujioka v. Kam*, 1973, 55 Haw. 7, 514 P.2d 568. The Hawaii statute had a ten-year limitation very similar to that in this state. The Hawaii court based its decision on equal protection, although it placed great reliance on the Illinois decision in *Skinner v. Anderson*, supra:

"It is clear that the classification does not rest upon some reasonable considera-

3. The immunity came into being five years after performance.

tion of differences (between the classes under the same circumstances), which have a fair and substantial relation to the object of the legislation. Nor is the classification founded upon a reasonable distinction or difference necessitated by state policy. A statute making such an unsupportable classification fails to meet the requirements of the equal protection guaranty. [Citations omitted.]

\* \* \* \* \* \*

"Here, it is clear that the statute calls for arbitrary and capricious discrimination and must therefore be declared an invidious discrimination violative of the equal protection guaranty." 514 P.2d at 571–572.

The Hawaiian court never specifically identified the provision of the Hawaiian Constitution relied upon. However, the Hawaiian Constitution provides for equal protection thus:

"No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry." Art. I, § 5, Constitution of the State of Hawaii (1979).

This language is very similar to the U. S. Constitution, Fourteenth Amendment.[4] Section 34, Art. I, of the Wyoming Constitution provides protection equivalent to that of the Fourteenth Amendment. *Washakie County School District Number One v. Herschler*, Wyo. 1980, 606 P.2d 310, 332.

In 1975, Wisconsin declared its statute[5] unconstitutional. *Kallas Millwork Corporation v. Square D Co.*, 1975, 66 Wis.2d 382, 225 N.W.2d 454. The Wisconsin court relied on *Skinner v. Anderson*, supra, and *Fujioka v. Kam*, supra, and premised its

decision on an equal protection rationale. The Wisconsin constitutional provision which served as the basis of that court's decision states:

"Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws." Wisconsin Constitution, Art. I, § 9 (1977).

The Wisconsin court could find no justification for the statute under the traditional analyses given to statutes of limitation. It found the statute:

" \* \* \* to give special and unusual immunities to the class referred to in the statute as persons 'performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property.'" 225 N.W.2d at 458.

The court went on to say:

"The test for finding legislation under the equal protection clauses of either the United States or Wisconsin Constitution invalid is not merely the determination that some inequality results from a classification but whether there exists any rational and reasonable justification for the classification. [Citation omitted.]" 225 N.W.2d at 458.

We note that what Wisconsin considers to be equal protection language is found in its constitutional provision very similar to our constitutional provision § 8, Art. I, supra.

Oklahoma declared its statute[6] unconstitutional in 1977. *Loyal Order of Moose, Lodge 1785 v. Cavaness*, Okl.1977, 563 P.2d 143, 93 A.L.R.3d 1234. Oklahoma relied on the Hawaii case, *Fujioka v. Kam*, supra,

4. "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

5. No suit more than six years after performance.

6. No suit seven years after performance.

and it considered, but did not entirely rest its decision on, a constitutional provision which reads:

"The Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this State." Art. 5, § 51, Constitution of the State of Oklahoma (1971).

This language is virtually identical with language contained in § 27, Art. III, of the Wyoming Constitution. Oklahoma based its finding of unconstitutionally primarily on the Fourteenth Amendment of the U. S. Constitution.

Minnesota found its statute [7] unconstitutional in 1977. *Pacific Indemnity Company v. Thompson-Yaeger, Inc.*, Minn. 1977, 260 N.W.2d 548. In addition to cataloging virtually every case that had been decided at that point in time, the Minnesota court selected out three of those cases and without much discussion adopted their reasoning:

"We have reviewed these cases carefully and are convinced that the better reasoned position is embodied in the decisions which hold such statutes to be unconstitutional because they grant an immunity from suit to a certain class of defendants, without there being a reasonable basis for that classification. We find the discussions in *Skinner v. Anderson*, supra, *Fujioka v. Kam*, supra, and *Kallas Millwork Corp. v. Square D Co.*, supra, particularly thorough on this point and do not feel compelled to elaborate further, except to state that we too can see no basis for including within the protection of the statute persons who construct or design improvements to real estate, and excluding other persons against whom third parties might bring claims should they incur injury, such as owners and material suppliers. Legislative classifications must apply uniformly to all persons who are similarly situated, and the distinctions which separate those who are included within a classification from those who are not must be natural and reasonable, not fanciful and arbitrary. *Schwartz v. Talmo*, 295 Minn. 356, 205 N.W.2d 318, appeal dismissed, 414 U.S. 803, 94 S.Ct. 130, 38 L.Ed.2d 39 (1973); 3B Dunnell, Dig. (3 ed.) § 1700. It appears that the statute contravenes this prohibition in that it grants a special immunity to persons within its terms, without a rational basis for regarding those persons as a distinct and separate class." 260 N.W.2d at 548.

The 1978 Minnesota Constitution provides:

### "ARTICLE XII

Section 1. "In all cases when a general law can be made applicable, a special law shall not be enacted except as provided in section 2. Whether a general law could have been made applicable in any case shall be judicially determined without regard to any legislative assertion on that subject. The legislature shall pass no local or special law * * * granting to any private corporation, association, or individual any special or exclusive privilege, immunity or franchise whatever or authorizing public taxation for a private purpose. The inhibitions of local or special laws in this section shall not prevent the passage of general laws on any of the subjects enumerated."

This provision is quite similar to § 27, Art. III, supra, Wyoming Constitution.

The Michigan Court of Appeals declared its statute [8] unconstitutional in 1978. *Muzar v. Metro Town Houses, Inc.*, 1978, 82 Mich.App. 368, 266 N.W.2d 850. Michigan also relied upon the Illinois, Hawaii, and Wisconsin decisions, though it adapted their language to fit an equal protection argument. Because of two subsequent decisions of that same court, we perceive the Michigan decision to be in doubt and hence will not discuss it further. *Bouser v. City of Lincoln Park*, 1978, 83 Mich.App. 167, 268 N.W.2d 332; *O'Brien v. Hazelet & Erdal, Consulting Engineers*, 1978, 84 Mich.App. 764, 270 N.W.2d 690.

---

**7.** No suit *ten* years after performance.

**8.** No suit six years after performance.

South Carolina declared its statute[9] unconstitutional in 1978. *Broome v. Truluck*, 1978, 270 S.C. 227, 241 S.E.2d 739. The opinion is brief and relies on the Illinois and Hawaii cases. Equal protection is the basis of the decision. The South Carolina court rested its decision on the Fourteenth Amendment to the U. S. Constitution as well as its own similar provision:

"The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, liberty, or property without due process of law, nor shall any person be denied the equal protection of the laws." Art. I, § 3, Constitution of South Carolina (1971).

Finally, Florida, in 1979, declared its statute[10] unconstitutional. *Overland Construction Co., Inc. v. Sirmons*, Fla. 1979, 369 So.2d 572. The Florida Supreme Court placed its reliance on *Saylor v. Hall*, supra, and its own constitution:

"The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." Art. I, § 21, Florida Constitution (1979).

Again, this provision is like Wyoming's Constitution, § 8, Art. I, supra.

There are a couple of cases worth mentioning for the value of the discussion contained in them, although neither is applicable here. The California Supreme Court recently skirted a constitutional challenge to its statute because it found a surety to be available for liability (though the contractor was not and this, the California court said, does not amount to denial of equal protection). Hence the question was avoided. *Regents of University of California v. Hartford Accident and Indemnity Co.*, 1978, 21 Cal.3d 624, 147 Cal.Rptr. 486, 581 P.2d 197. In making this decision, the California Supreme Court vacated an intermediate appellate court decision which had held the statute to be constitutional. (*Regents of University of California v. Hartford Accident and Indemnity Co.*, Cal.App., 131 Cal.Rptr. 112.) Thus, the question is apparently still open in California.

Colorado has also skirted a constitutional challenge to its statute. No constitutional issue was raised in the case (at least one court has not let that serve as an impediment to challenging the statute—Hawaii). Colorado's statute is somewhat different from those found in many of the other states discussed above, and the court so limited its meaning so as to avoid applying it in the case it considered. The Colorado court held that the statute applied to injuries arising out of the defect—but not to the defect itself—which was all plaintiff was suing for. *Duncan v. Schuster-Graham Homes, Inc.*, 1978, 194 Colo. 441, 578 P.2d 637. Such a reading is not possible under the Wyoming statute. But see *City of Aurora, Colorado v. Bechtel Corp.*, 10th Cir. 1979, 599 F.2d 382, where the court held that the Colorado limitation does not begin to run until discovery.

We note in passing a Maryland case dealing with an unrelated question, but which reveals that the Maryland statute provides for a 20-year limitation. *Allentown Plaza Associates v. Suburban Propane Gas Corp.*, 1979, 43 Md.App. 337, 405 A.2d 326.

The Alabama statute has an interesting history. In *Bagby Elevator and Electric Co., Inc. v. McBride*, 1974, 292 Ala. 191, 291 So.2d 306, the statute was declared unconstitutional because of a problem with enactment. In *Plant v. R. L. Reid, Inc.*, 1975, 294 Ala. 155, 313 So.2d 518, the statute was declared vague and hence inoperative and void. Both decisions recognized the many jurisdictions which have ruled on the constitutionality of such statutes, but, of course, the Alabama court said it did not have to reach those issues.

We shall note briefly examples of the cases which permit such statutes to survive constitutional scrutiny. Some have very good discussions of the question. However, we do not find them persuasive. The most

---

**9.** No suit four years after performance.

**10.** No suit twelve years after performance.

recent and thorough constitutional defense of these statutes is made by the Supreme Court of Pennsylvania. *Freezer Storage, Inc. v. Armstrong Cork Co.*, 1978, 476 Pa. 270, 382 A.2d 715. The Pennsylvania court rejected an argument premised on the statute being a special law, concluding that the statute draws a rational distinction based on real differences in the business world:

" * * * However, assuming arguendo that suppliers are not within the class of builders, the distinction drawn between the two classes is rational. Suppliers, who typically produce items by the thousands, can easily maintain high quality-control standards in the controlled environment of the factory. A builder, on the other hand, can pre-test his designs and construction only in limited ways—actual use in the years following construction is their only real test. Further, every building is unique and far more complex than any of its component parts. Even in the most uniform-looking suburban subdivision, each house stands on a separate plot of land; each lot may have slightly different soil conditions; one may be near an underground stream; and so forth. The Legislature can rationally conclude that the conditions under which builders work are sufficiently difficult that limitations should be placed on their liabilities, but not on the liabilities of suppliers." 382 A.2d at 719.

The Pennsylvania court also rejected arguments based on constitutional provisions mandating open courts (see *Saylor v. Hall*, supra, and *Overland Construction Co. v. Sirmons*, supra) and prohibiting limitations on the amount recoverable for injuries to person or property. We cannot agree that architects' and contractors' lots in the business world are so onerous as to entitle them to an immunity denied to all others.

An Arkansas decision made in 1970, which upheld such a statute is frequently cited in decisions which find the statute to be constitutional. *Carter v. Hartenstein*, 1970, 248 Ark. 1172, 455 S.W.2d 918. The opinion, however, contains little discussion and is, for the most part, conclusory in its disposition. Montana sustained its statute relying heavily on the Arkansas case, and reaching a most unusual result. We do not find it at all persuasive. *Reeves v. Ille Electric Company*, 1976, 170 Mont. 104, 551 P.2d 647. Louisiana sustained its statute in 1978. *Burmaster v. Gravity Drainage District No. 2 of Parish of St. Charles*, La. 1978, 366 So.2d 1381. The statute was challenged on numerous state and federal constitutional grounds. The court discusses all the questions but did not look at the wealth of authority developed by the various jurisdictions discussed above, but rather relied almost exclusively on its own precedents which were not directly in point.

An intermediate court of appeals of New Mexico sustained its statute in 1977. *Howell v. Burk*, 1977, 90 N.M. 688, 568 P.2d 214. That court presented a full discussion of the varying viewpoints taken on these statutes but found their statute to be valid. A spirited and well-written dissent suggested the decision may be reconsidered by New Mexico's highest court. At this date, no such action has been taken.

We shall only mention in passing that Utah, Washington, and Oregon have sustained their respective statutes. Those cases are extremely conclusory in their holdings and they do not add appreciably to the difficult and technical discussion warranted by these troublesome statutes. They merely add numbers to that viewpoint which finds the statutes to be constitutional. The statutes in those states all vary somewhat from our statute, although the differences would not appear to make the crucial difference between constitutionality and unconstitutionality. See *Good v. Christensen*, Utah 1974, 527 P.2d 223; *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 1972, 81 Wash.2d 528, 503 P.2d 108; *Josephs v. Burns*, 1971, 260 Or. 493, 491 P.2d 203. In Oregon and Washington, the statutes do not enumerate a class as does the Wyoming statute but rather merely declares all persons immune from suit after seven years.

We do not purport to have exhausted the list of cases which have dealt with this

question. There are others cited at 93 A.L. R.3d 1242, 18 Cath.U.L.Rev. 361 (1969), and within the cases which we discussed above. We are satisfied that we have weighed the divergent viewpoints with care and thoroughness.

We hold that the statute in question, § 1–3–111, supra, is not a statute of limitations but is a grant of immunity from suit. This immunity is conferred only on a narrow spectrum of defendants. We hold there is no rational or reasonable justification for granting this immunity to this limited class of persons. Further, we hold that the statute is a special law at least to the extent that no special law can be enacted where a general one can be made applicable. In this instance a general law can be made applicable. Wyoming Constitution, § 8, Art. I, and § 27, Art. III, supra. Moreover, the statute operates so as to close the courts to individuals who have had dealings with the protected class in violation of Wyoming Constitution, § 8, Art. I, supra.

In summary, the statute, both in theory and application, is totally inconsistent with the spirit and letter of our state constitution. For this reason, there is no need to express any views with regard to a violation of the Fourteenth Amendment of the U. S. Constitution.

The order of the district court is reversed and the case remanded to the district court for further proceedings consistent with this opinion.

ROONEY, Justice, specially concurring.

I find § 1–3–111, W.S. 1977 to be in violation of Art. 3, § 27, Wyoming Constitution in that it is a "special law[s] * * * granting to any corporation, association or individual * * * special or exclusive * * * immunity * * *" for the reasons outlined in *Skinner v. Anderson*, 38 Ill.2d 455, 231 N.E.2d 588 (1967) as quoted in the majority opinion.

I would limit the holding thereto, and note that an enactment of a statute of limitations for bringing of the actions referred to in § 1–3–111 would be constitutional if it were all inclusive as to the class of persons against whom the actions may not be brought.

I find no pertinency to the issues in this case in *Moxley v. Laramie Builders, Inc.*, Wyo., 600 P.2d 733 (1979), or in *Tavares v. Horstman*, Wyo., 542 P.2d 1275 (1975). The legislature has the right to enact reasonable statutes of limitations relative to the remedies for any actions so long as they are of general application and do not destroy fundamental rights. *Chase Securities Corporation v. Donaldson*, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945), rehearing denied 325 U.S. 896, 65 S.Ct. 1561, 89 L.Ed. 2006 (1945); *Perry v. Allen*, 5th Cir. 1956, 239 F.2d 107; and *Rand v. Bossen*, 27 Cal.2d 61, 162 P.2d 457 (1945).